# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | |
|---|---|
| The STATE OF TEXAS, *et al.*, ) <br> ) <br> *Plaintiffs,* ) <br> ) <br> v. ) <br> ) <br> JOSEPH R. BIDEN, JR., ) <br> in his official capacity as ) <br> President of the United States, *et al.*, ) <br> ) <br> *Defendants.* ) <br> ) | Civil Action No. 2:22-cv-00014-M |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF RELATED CASES**

## INTRODUCTION

The Court should reject Plaintiffs' untimely effort to relate this matter to *Texas, et al., v. Biden, et al.*, No. 2:21-cv-0067 (N.D. Tex.) (Kacsmaryk, J.) ("*Texas I*"). Plaintiffs' submission of an amended civil cover sheet, ECF No. 3, asserting the relation of the cases only *after* this case had already been assigned is transparent forum shopping. And even were the attempted relation of cases timely, *Texas I* does not "arise[] from a common nucleus of operative fact with the case being filed." N.D. Tex. L.R. 3.3(b)(3). *Texas I* challenged the termination of the Migrant Protection Protocols ("MPP"). This case challenges the ongoing implementation of the Central American Minors ("CAM") Program. Outside of the extremely general observation that both are immigration programs involving federal immigration agencies, MPP and CAM concern wholly different participants, operate in different locations to different effect, and result in different outcomes for the noncitizens involved. The cases are not related, and the court should reject Plaintiffs' obvious attempt at circumventing the random case assignment rules.

Plaintiffs have not supported their contention that this case is related to *Texas I*. Should they do so in supplemental briefing, Defendants intend to respond to Plaintiffs' arguments with a reply.

## BACKGROUND

Plaintiffs, eight states suing in their own capacities, filed the instant case in this district on January 28, 2022. ECF No. 1. Plaintiffs challenge the CAM, which was first implemented in 2014, later reinstated subsequent to termination in 2019, and expanded in June 2021. *See generally id.* CAM provides certain children in Guatemala, Honduras, and El Salvador an opportunity to reunite with their parents or legal guardians in the United States. It permits certain noncitizens in the United States as lawful permanent residents or lawfully present under temporary protected

2

status, parole, deferred action, deferred enforced departure, or withholding of removal, or with pending asylum applications or U-visa petitions filed before May 15, 2021, to petition for access to the U.S. Refugee Admissions Program on behalf of their children under age 21 who are nationals of El Salvador, Guatemala, or Honduras for potential resettlement in the United States. *Id.* ¶ 3.[1] Plaintiffs allege that CAM permits qualifying children to enter the United States as refugees or parolees, and that an in-country parent, legal guardian, or primary caregiver of a qualifying child can also be considered for refugee or parole under CAM. *Id.* ¶¶ 3-7. They allege that CAM operates under two statutory authorities: "the Refugee Admissions Program under 8 U.S.C. § 1157, and the "parole" authority under 8 U.S.C. § 1182(d)(5)(A)." *Id.* ¶ 5. They assert claims under the Administrative Procedure Act ("APA") and Take Care Clause of the U.S. Constitution. *Id.* ¶¶ 76-104. Outside of the State of Texas's presence as one of the plaintiffs, the Complaint does not indicate any particular connection between this challenge to a nationwide federal program and this State in general, or to the Northern District of Texas in particular. *See generally id.*

When Plaintiffs filed this case on January 28, 2022, their civil cover sheet did not indicate that the matter was related to another case—for good reason, as this case is not. ECF No. 1-1 at 1. The matter was randomly assigned to this Court. After that assignment, Plaintiffs filed a different civil cover sheet on January 31, 2022, which, for the first time, asserted this case was related to No. 2:21-cv-00067, which is currently before District Judge Matthew Kacsmaryk, i.e., *Texas I*. ECF No. 3 at 1. The *Texas I* case involved a challenge by the States of Texas and Missouri to the termination of MPP in June 2021, under the APA, 8 U.S.C. § 1225 and the Take Care Clause.

---

[1] *See also* Office of the Spokesperson, Joint Statement by the U.S. Department of State and U.S. Department of Homeland Security on the Expansion of Access to the Central American Minors Program, June 15, 2021, available at, https://www.state.gov/joint-statement-by-the-u-s-department-of-state-and-u-s-department-of-homeland-security-on-the-expansion-of-access-to-the-central-american-minors-program/ ("Joint Statement"); *see also* Central American Minors (CAM) Refugee and Parole Program, available at https://www.uscis.gov/CAM.

3

*Texas v. Biden*, No. 2:21-CV-067-Z, 2021 WL 3603341, at *1 (N.D. Tex. Aug. 13, 2021), *aff'd*, 20 F.4th 928 (5th Cir. 2021), *cert. petition filed* Dec. 29, 2021. MPP was a program, announced in December 2018, and initiated in January 2019, in which DHS officers were authorized to use the discretionary authority provided at 8 U.S.C. § 1225(b)(2)(C), which provides that DHS may return certain noncitizens "who [are] arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States," "to that territory pending a [removal] proceeding under section 1229a of this title." Under MPP, eligible noncitizens apprehended at the Southwest border were returned to Mexico for the duration of their removal proceedings. *Id.* at *4-*5. MPP exempted many categories of noncitizens from eligibility, including noncitizens with parole status. *Id.* at *5.

On June 1, 2021, the Secretary of Homeland Security issued a memorandum ending MPP and announcing that he had "no intention to resume MPP in any manner similar to the program." Memo. from Alejandro N. Mayorkas regarding Termination of the Migrant Protection Protocols Program at 7 (June 1, 2021), *available at* https://go.usa.gov/x6s7E. Subsequently, on August 13, 2021, Judge Kacsmaryk issued an injunction that vacated the Secretary's termination memo, remanded the matter to the agency for further consideration, and required DHS to reimplement MPP in good faith. *Texas I*, 2021 WL 3603341 at *27. The *Texas I* court held that the Government's termination of MPP violated the APA and Immigration and Nationality Act ("INA") and entered an injunction requiring the reimplementation of MPP "until such a time as it has been lawfully rescinded in compliance with the APA and until such a time as the federal government has sufficient detention capacity to detain all aliens subject to mandatory detention

4

under Section 12[2]5 without releasing any aliens because of a lack of detention resources." *Id.* at *27. Accordingly, at this time, MPP exists only as a court-ordered program.[2]

The government promptly appealed the injunction. *Texas v. Biden*, 20 F.4th 928 (5th Cir. 2021). While that appeal was pending, the Secretary, after thoroughly reconsidering the matter on remand, issued a new decision to terminate MPP, considering every factor *Texas I* deemed lacking and providing additional explanation for why MPP is not in the best interest of the United States.[3] The Fifth Circuit in the meantime affirmed the injunction. 20 F.4th at 945. The government then filed a petition for writ of certiorari with the Supreme Court, requesting that the Court expedite the case and decide it this term. *See Texas v. Biden*, No. 21-954. That petition remains pending.

## ARGUMENT

Plaintiffs' belated and improper effort to relate this case to *Texas I* should be denied because it represents an abuse of the case-relation mechanism to subvert the impartial assignment of cases and because this case shares no factual overlap with *Texas I*, as required by Local Rules.

Local rules require a plaintiff to immediately notify the Court of case relation. "When a plaintiff files a complaint and there is a related case … the complaint *must be accompanied by* a notice of related case." L.R. 3.3(a) (emphasis added). As relevant here, the Rule defines a "related case" to be "any civil action …that—to the best of the plaintiff's or removing party's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances—*arises from a common nucleus of operative fact* with the case being filed or removed, regardless whether the related case is a pending case[.]" L.R. 3.3(b)(3) (emphasis added). The Rule further provides that

---

[2] *See Guidance Regarding the Court-Ordered Reimplementation of the Migrant Protection Protocols*, https://www.dhs.gov/sites/default/files/publications/21_1202_plcy_mpp-policy-guidance_508.pdf.

[3] *See* Memo. from Alejandro N. Mayorkas, Termination of the Migrant Protection Protocols Program at 7 (Oct. 29, 2021), https://www.dhs.gov/sites/default/files/publications/21_1029_mpp-termination-memo.pdf; U.S. Dep't of Homeland Security, Explanation of the Decision to Terminate the Migrant Protection Protocols (Oct. 29, 2021), https://www.dhs.gov/sites/default/files/publications/21_1029_mpp-termination-justification-memo.pdf.

a "plaintiff who does not file a notice of related case under LR 3.3(a) … certifies that there is no related case, as defined in LR 3.3(b), to the case being filed or removed." L.R. 3.3(c); *see Six Flags Ent. Corp. v. Travelers Cas. & Sur. Co. of Am.*, No. 4:21-CV-00670-P, 2021 WL 2064903, at *2 (N.D. Tex. May 21, 2021) (in applying L.R. 3.3(a), the Court was reticent to "'devote scarce resources to supervising matters that do not advance the resolution of the merits of a case'") (quoting *Dondi Properties Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284, 286 (N.D. Tex. 1988)).

Improperly relating cases would defeat the purpose of the Court's neutral case assignment system. A random allotment distributes cases "in a neutral manner rather than at the behest of one party or the other." *United States v. Osum*, 943 F.2d 1394, 1400–01 (5th Cir. 1991). Random assignment of cases aims "to ensure greater public confidence in the integrity of the judicial process" by "guarantee[ing] fair and equal distribution of cases to all judges, avoid[ing] public perception or appearance of favoritism in assignments, and reduc[ing] opportunities for judge-shopping." *Tripp v. Exec. Office of the President*, 196 F.R.D. 201, 202 (D.D.C. 2000). Public confidence in judicial integrity and avoiding the appearance of favoritism are both paramount considerations here.

In narrow situations presenting strong reasons of judicial economy, local rules may provide an exception for assigning a case to a particular judge who has a related case pending. *See Comm. on Judiciary v. McGahn*, 391 F. Supp. 3d 116, 118 (D.D.C. 2019). The party seeking to invoke the exception to the random assignment rule bears a "heavy" burden of showing that the cases are "related" under the rule, "as random assignment of cases is essential to the public's confidence in an impartial judiciary." *Id*. at 119 (punctuation omitted). Plaintiffs cannot meet that burden here.

Plaintiffs failed to notify the Court of their belief that this case was related to *Texas I* when they filed the Complaint, in violation of the Local Rule. *See* L.R. 3.3(a). Only after the case was randomly assigned did Plaintiffs belatedly file another civil cover sheet alleging the case was related to *Texas I*. *See* ECF No. 3 at 1. Plaintiffs' gamesmanship threatens to undermine the neutral manner in which cases are assigned in this District. *See Osum*, 943 F.2d 1394, 1400–01. Their blatant "judge-shopping" would diminish "public confidence in the integrity of the judicial process." *See Tripp*, 196 F.R.D. at 202. The initial failure of all eight Plaintiffs to notify the Court of the alleged case relation underscores their tacit acknowledgment that this case is not related to any other. *See* L.R. 3.3(c).

The cases are unrelated because they lack any "common nucleus of operative fact." L.R. 3.3(b)(3). Generally, courts find that cases share a common nucleus of operative fact where they arise from the same transaction or occurrence or series of transactions or occurrences. *See, e.g.*, *Matter of Howe*, 913 F.2d 1138, 1144 & n.10 (5th Cir. 1990); *In re Toyota Hybrid Brake Litig.*, No. 4:20-CV-127, 2021 WL 2805455, at *18 (E.D. Tex. July 6, 2021) ("More concretely, courts tend to characterize claims derived from a common nucleus of operative fact as those arising out of the same occurrence.") (internal quotation omitted); *NatureSweet, Ltd. v. Mastronardi Produce, Ltd.,* No. 3:12-CV-1424-G, 2013 WL 460068, at *4 (N.D. Tex. Feb. 6, 2013) (explaining that if claims arise out of the same transaction or occurrence to meet the compulsory counterclaim test under Fed. R. Civ. P. 13, then they also are within the common nucleus of operative fact) (internal quotation omitted).

This case does not arise out of the same occurrence as *Texas I*, and do not share a nucleus of operative fact. CAM and MPP are fundamentally different immigration programs: started at different times, operating in different geographic spaces, affecting different noncitizen populations

under different authorizing statutes, and providing different (indeed, almost opposite) immigration effects on noncitizens deemed eligible for either program. CAM was first launched in 2014, operates under the authority to admit refugees in section 1157 and the authority to parole noncitizens into the United States, 8 U.S.C. § 1182(d)(5)(A), and now permits lawfully present noncitizens living in and located *across the United States* to file an Affidavit of Relationship requesting that their eligible relatives, including their children, be considered for refugee status or parole permitting them to *enter* the United States. *See* ECF No. 1 ¶¶ 3-7; Joint Statement. MPP only began in 2019, is a programmatic implementation of the return authority in section 1225(b)(2)(C), and concerns *return* of certain inadmissible noncitizens *at the Southwest border* to Mexico pending removal proceedings. *Texas I*, 2021 WL 3603341, at *4-*5. Unlike MPP enrollees, CAM participants are not in removal proceedings or eligible for detention. The suits thus arise from wholly separate occurrences lacking a common core. *See Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1595 (2020) ("[T]he two suits here were grounded on different conduct, involving different marks, occurring at different times. They thus did not share a 'common nucleus of operative facts.'").

Indeed, Plaintiffs' own allegations concede a lack of overlap between the underlying facts. Plaintiffs acknowledge that CAM beneficiaries enter the United States only as refugees or parolees. ECF No. 1 ¶ 6. Persons granted refugee status are admitted to the United States, *see* 8 U.S.C. § 1157(c), and are thus not susceptible to removal proceedings or detention, and therefore not eligible for return under MPP. *See* 8 U.S.C. § 1225(b)(2)(C) (applies only to noncitizens detained for removal proceedings). Likewise, "noncitizens with an advance parole document or in parole status" were ineligible for MPP. *Texas I*, No. 2:21-CV-067-Z, 2021 WL 3603341, at *5. Thus, *CAM participants are categorically ineligible for inclusion in MPP at all*, underscoring how

disparate the factual circumstances and legal theories at issue in the two cases are. *See Trump v. Comm. on Ways and Means*, 391 F. Supp. 3d 93, 96 (D.D.C. 2019) (even where cases involved same parties, they involved different legal theories and different facts); *accord Six Flags,* 2021 WL 2064903, at *2 (suggesting cases are related where "[a]ll three cases share a common nucleus of operative fact, arising from Six Flags' alleged securities violations").

The only commonalities between *Texas I* and this case are purely cosmetic: both challenges are brought under the broad, overarching roof of the Immigrant and Nationality Act, and both name many of the same governmental Defendant officers and agencies. Finding cases related for these general reasons would lead to absurd results, as thousands of cases involve challenges under the APA or INA, and are directed at Executive action affecting entry of noncitizens. Virtually all immigration cases therefore could be deemed related and set before the same preferred judge.

Although both cases allege violations of the APA and Take Care Clause by federal immigration agencies, the respective claims are far from similar. Plaintiffs Texas and Missouri challenge the suspension of *returns* to Mexico under MPP in *Texas I*. Here, six additional Plaintiff States join Texas and Missouri to challenge the *entry* as refugees and parolees under CAM of noncitizens categorically ineligible for MPP. The common statutes and defendants are incidental. *See Nozolino v. Hartford Life & Acc. Ins. Co.,* No. 12-CV-04314-JST, 2013 WL 2468350, at *1 (N.D. Cal. June 7, 2013) (rejecting claim that cases are related because they involve claims brought under a similar statute and have a similar defendant); *accord McGahn*, 391 F. Supp. 3d at 121 ("Relation based on a litigant's purpose simply sweeps too broadly."); *Dale v. Exec. Office of President*, 121 F. Supp. 2d 35, 37 (D.D.C. 2000) (cases did not involve common facts merely because they involved claims based on denial of Privacy Act requests). Critically, the two distinct sets of plaintiffs are not starting from a similar set of facts, as explained. *See Agrilectric Power*

*Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1994) ("[T]he critical issue is …whether the plaintiff bases the two actions on the same nucleus of operative facts…. The substantive theories advanced, forms of relief requested, types of rights asserted, and variations in evidence needed do not inform this inquiry.").

Further, in *Texas I*, the plaintiffs had expressly disavowed any challenge to parole practices. *Texas I*, No. 21-10806 (5th Cir.), Record on Appeal ("ROA") at 3126 (citing trial transcript).[4] Still, in a footnote, the Court observed that "[a]ny class-wide parole scheme that paroled aliens into the United States simply because DHS does not have the detention capacity would be a violation of the narrowly prescribed parole scheme[.]" *Texas I*, 2021 WL 3603341, at *22 n.11. The Court, however, did not hold that such a violation occurred, nor did it otherwise address parole authority. *See id.* This marginal observation about parole authority, moreover, has no bearing on this case. The parole *Texas I* spoke of was for individuals detained in the United States, *see id.*; CAM participants are ineligible for detention. Further, Plaintiffs are not alleging that the impetus for permitting any CAM participants to enter under parole is lack of detention capacity. *See Insuremax Ins. Agencies, Inc. v. Shanze Enters., Inc.*, No. 3:13-CV-1231-M, 2013 WL 4014476, at *2 (N.D. Tex. Aug. 7, 2013) (explaining that sharing "a peripheral point that joins the claims only at their edges" is insufficient to establish a common nucleus of operative fact").

Instead, the programs at issue in these distinct cases apply to different populations of noncitizens, address different legal equities (in this case, lawfully present noncitizens seeking to be reunited with their children and other relatives, and in *Texas I*, removable noncitizens returned

---

[4] During the bench trial in *Texas I*, the Court asked counsel for Plaintiffs: "Isn't Plaintiffs' case truly a challenge to the government's parole practices and not the termination of MPP?" *Texas I*, No. 21-10806, ROA 3126. To which Plaintiffs' counsel responded: "No, Your Honor. We're not challenging, you know, any kind of individual grant of parole or even the parole policies." *Id.; see* Appellants' Reply Br. at 14.

10

to Mexico), and have different alleged impacts on state and local communities. Indeed, any contention that these cases similarly address events at the border raises questions why this case and *Texas I* were filed in this District. Filing the case here rather than in a jurisdiction with a closer nexus to the challenged actions in this case highlights the appearance that Plaintiffs are forum-shopping.

## CONCLUSION

For the foregoing reasons, the Court should reject Plaintiffs' untimely request to relate this distinct matter to *Texas, et al., v. Biden, et al.*, No. 2:21-cv-0067 (N.D. Tex.), and reject their efforts to handpick a jurist and undermine public confidence in judicial integrity.

Dated: February 1, 2022  Respectfully submitted,

CHAD E. MEACHAM  BRIAN M. BOYNTON
*United States Attorney*  *Acting Assistant Attorney General*

BRIAN W. STOLZ  WILLIAM C. PEACHEY
*Assistant United States Attorney*  *Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

/s/ *Joseph A. Darrow*
JOSEPH A. DARROW
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 598-7537
Joseph.a.darrow@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that on February 1, 2022, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

                                          /s/ *Joseph A. Darrow*
                                          JOSEPH A. DARROW
                                          U.S. Department of Justice