IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| The STATE OF TEXAS, *et. al*. § | |
| § | |
| *Plaintiffs,* § | |
| § | CIVIL ACTION NO. 2:22–cv–00014-M |
| vs. § | |
| § | |
| JOSEPH R. BIDEN, JR., § | |
| in his official capacity as § | |
| President of the United States, *et al.*, § | |
| § | |
| *Defendants.* § | |

**<u>PROPOSED INTERVENORS' MOTION TO PROCEED UNDER
PSEUDONYMS AND BRIEF IN SUPPORT</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

    1.    Proposed Intervenors Seek to Challenge Government Action ............................... 2

    2.    Proposed Intervenors Must Disclose Information of the Utmost Intimacy ........... 3

    3.    Proposed Intervenors and Their Families May Face Threats of Violence If Not Permitted to Use Pseudonyms ......................................................................... 5

        A.    Revealing Proposed Intervenors' Names May Increase the Danger to Their Families in El Salvador and Honduras and Place Proposed Intervenors in Danger if They Are Forced to Return ................................. 5

        B.    Revealing Proposed Intervenors' Names May Expose Them and Their Families in the United States to Violence ........................................ 8

    4.    Identifying Proposed Intervenors May Expose Vulnerable Minors to Harm ...... 10

    5.    Proposed Intervenors' Need for Anonymity Outweighs Any Prejudice to the Parties and the Public Interest ........................................................................ 10

CONCLUSION ...................................................................................................................... 11

CERTIFICATE OF CONFERENCE ..................................................................................... 12

CERTIFICATE OF SERVICE ............................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Otro Lado, Inc. v. Nielsen*,
    No. 17-cv-02366-BAS-KSC, 2017 WL 6541446 (S.D. Cal. Dec. 20, 2017) ............................ 9

*Anim v. Mukasey*,
    535 F.3d 243 (4th Cir. 2008) ............................................................................................... 4

*C.M. v. United States*,
    No. SA-21-CV-00234-JKP, 2021 WL 1822305 (W.D. Tex. Mar. 31, 2021) ............... 8, 10, 11

*City of Hazleton v. Lozano*,
    563 U.S. 1030 (2011) ........................................................................................................... 4

*D.G.L. v. Collins*,
    No. A-20-CV-1126-RP-SH, 2020 WL 10355163 (W.D. Tex. Nov. 18, 2020) ....................... 8

*Doe v. Hood*,
    No. 3:16-CV-00789-CWR-FKB, 2017 WL 2408196 (S.D. Miss. June 2, 2017) ................. 11

*Doe v. INS*,
    867 F.2d 285 (6th Cir. 1989) ............................................................................................... 8

*Doe v. Stegall*,
    653 F.2d 180 (5th Cir. 1981) ..................................................................................... *passim*

*Doe v. U.S. Citizenship and Immigr. Servs.*,
    No. 1:21-cv-00576-NONE-SAB, 2021 WL 1907562
    (E.D. Cal. May 12, 2021) ..................................................................................................... 8

*E.B. v. Landry*,
    No. 19-862-JWD-SDJ, 2020 WL 5775148 (M.D. La. Sept. 28, 2020) ................................. 2

*EW v. N.Y. Blood Ctr.*,
    213 F.R.D. 108 (E.D.N.Y. 2003) ....................................................................................... 10

*Grace v. Sessions*,
    No. 1:18-cv-01853, 2018 WL 11247769 (D.D.C. Aug. 7, 2018) .......................................... 4

*Hispanic Int. Coal. of Ala. v. Governor of Ala.*,
    691 F.3d 1236 (11th Cir. 2012) ............................................................................................ 4

*Int'l Refugee Assistance Project v. Trump*,
  No. TDC-17-0361, 2017 WL 818255 (D. Md. Mar. 1, 2017) ...................................................3

*James v. Jacobsen*,
  6 F.3d 233 (4th Cir. 1993) ........................................................................................................8

*Kiakombua v. McAleenan*,
  No. 19-cv-1872 (KBJ), 2019 WL 11322784 (D.D.C. July 3, 2019) .........................................4

*Lozano v. City of Hazleton*,
  620 F.3d 170, 195 (3d Cir. 2010) ..............................................................................................4

*O.A. v. Trump*,
  No. 1:18-cv-02718, 2018 WL 11249801 (D.D.C. Nov. 20, 2018) ............................................4

*Plaintiff B. v. Francis*,
  631 F.3d 1310 (11th Cir. 2011) .................................................................................................2

*S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*,
  599 F.2d 707 (5th Cir. 1979) ................................................................................................2, 10

*S.A. v. Trump*,
  No. 18-cv-03539-LB, 2018 WL 3054794 (N.D. Cal. June 19, 2018) .......................................5

*In re Sealed Case*,
  931 F.3d 92 (D.C. Cir. 2019) .....................................................................................................8

*Sealed Plaintiff v. Sealed Defendant*,
  537 F.3d 185 (2d Cir. 2008) .................................................................................................8, 10

*Texas v. United States*,
  805 F.3d 653 (5th Cir. 2015) .....................................................................................................5

**Other Authorities**

8 C.F.R. § 208.6 (2021) ...................................................................................................................3

8 C.F.R. § 1208.6 (2021) ............................................................................................................3, 4

Fed. R. Civ. P. 5.2 .......................................................................................................................3, 10

# INTRODUCTION

Proposed Intervenors Jesus, Rosa, Timoteo, and Uzias are four parents living in the United States who are beneficiaries of the Central American Minors ("CAM") Program. They seek to defend the program against Plaintiffs' legal challenge, *see* ECF No. 14 ("Am. Compl.") so that their families, and others like them, continue to have the opportunity to reunite and to remain reunited in safety in the United States through CAM.

Proposed Intervenors fear that publicly revealing their identities in this action may increase the existing danger to their families in El Salvador and Honduras and to themselves if they are required to leave the United States in the future. They further fear that publicizing their identities may put Proposed Intervenors and their minor children in the United States at risk of extensive harassment and violence given the highly charged political climate around immigration in states the Proposed Intervenors call home. In order to ensure that CAM beneficiaries can be heard in this case without jeopardizing the safety of Proposed Intervenors and their families, Proposed Intervenors request to proceed under pseudonyms. Defendants have consented to this motion, and Plaintiffs oppose the motion.

# ARGUMENT

The Fifth Circuit allows the use of pseudonyms in cases where the need for party anonymity outweighs the procedural custom of disclosure. *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981). In determining whether such need exists, the Fifth Circuit employs a case-specific balancing analysis that considers all of the relevant facts, with "considerable weight" placed on three factors: (1) whether the case involves a challenge to governmental activity; (2) whether the party would be compelled to disclose information "of the utmost intimacy"; and (3) whether the party would be compelled to admit their intention to engage in illegal conduct, thereby risking criminal prosecution. *Stegall*, 653 F.2d at 185-87. Other factors relevant to this analysis include

whether the party seeking to proceed anonymously may face threats of violence and the "age and related vulnerability" of the party. *Id.* at 185-86 (considering threats of violence and young age of plaintiffs in concluding that use of pseudonyms was justified). Courts also consider whether anonymity poses "a unique threat of fundamental unfairness" to the opposing party. *Plaintiff B. v. Francis*, 631 F.3d 1310, 1316, 1318 (11th Cir. 2011) (considering opposing party's failure to identify any specific harm in opinion vacating district court's denial of pseudonym motion). There is no "hard and fast formula" for this inquiry, and all factors need not be present for a party to be permitted to use a pseudonym. *See Stegall*, 653 F.2d at 185-86.

In this case, the privacy interests of Proposed Intervenors outweigh the procedural custom of disclosure because (1) Proposed Intervenors seek to challenge government action; (2) they are required to disclose information "of the utmost intimacy"; (3) if not permitted to use pseudonyms, they and their families may face serious threats of violence; (4) revealing Proposed Intervenors' names may expose vulnerable minors to harm; and (5) the need for anonymity outweighs any prejudice to the opposing party and the public interest.

**1.  Proposed Intervenors Seek to Challenge Government Action**

This case is a statutory and constitutional challenge to a governmental policy filed by Plaintiff States against federal government Defendants. *See generally* Am. Compl., ECF No. 14. The Fifth Circuit has recognized that such cases do not present the same concerns about reputational injury resulting from pseudonymous litigants as do suits against private parties. *See S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979). Indeed, Proposed Intervenors have not publicly charged anyone with wrongdoing; rather they seek to defend federal governmental activity against legal attack. *See E.B. v. Landry*, No. 19-862-JWD-SDJ, 2020 WL 5775148, at *2 (M.D. La. Sept. 28, 2020) (observing that cases that are

"largely legal in nature" and those involving "constitutional validity of government activity" support anonymity, and collecting cases).

**2.      Proposed Intervenors Must Disclose Information of the Utmost Intimacy**

Proposed Intervenors must disclose information of the utmost intimacy about their immigration status and their CAM applications on behalf of their children to demonstrate that intervention is appropriate, as well as to show the harm they and others like them will suffer if the CAM Program is terminated or dismantled, which is the reason Proposed Intervenors seek to intervene in this case.[1] Immigration status of oneself and one's family constitutes "sensitive and highly personal" information, particularly where if disclosed, it "could jeopardize [family members'] safety in foreign countries." *See, e.g.*, *Int'l Refugee Assistance Project v. Trump*, No. TDC-17-0361, 2017 WL 818255, at *2 (D. Md. Mar. 1, 2017) (explaining that plaintiffs' immigration status "ha[s] been deemed to be sufficiently sensitive and personal in nature to support plaintiffs' use of pseudonyms under appropriate circumstances," and collecting cases); *see also* Evarts Decl., Ex. L, App'x at 181 (recognizing that immigration cases involve information that is "too sensitive to be broadly available" and therefore according these cases "unique status" in federal courts' electronic filing system); Fed. R. Civ. P. 5.2(c) (limiting public access to immigration case filings).

Federal regulations provide for the confidentiality of applicants for refugee resettlement and asylum, including the fact that an applicant has applied for such status. *See* 8 C.F.R. §§ 208.6, 1208.6 (2021). The Department of Homeland Security has recognized that these regulations are of the "utmost importance" in protecting applicants because they safeguard information that, if

---

[1] *See* concurrently filed Mot. to Intervene at 14 (describing Proposed Intervenors' concern about humanitarian impact of terminating or dismantling the CAM Program); Evarts Decl., Ex. A, App'x at 100-01 (describing CAM Program eligibility).

3

disclosed publicly, "could subject the claimant to retaliatory measures by government authorities or non-state actors in the event that the claimant is repatriated, or endanger the security of the claimant's family members who may still be residing in the country of origin." *Anim v. Mukasey*, 535 F.3d 243, 253 (4th Cir. 2008) (internal quotation marks omitted). Indeed, if an applicant's confidentiality has been breached in violation of § 208.6, the applicant must be granted an opportunity to establish a new claim for immigration relief based on the breach itself. *Id.*

As courts have repeatedly recognized, revealing the names of parties in immigration cases can put the parties themselves, as well as innocent non-parties, at risk of harassment and physical harm. *See e.g., Lozano v. City of Hazleton,* 620 F.3d 170, 195 (3d Cir. 2010) (use of pseudonyms appropriate where plaintiffs, because of immigration status, "would face an exponentially greater risk of harassment, and even physical danger, if their identities were revealed" (internal quotation marks omitted)), *vacated on other grounds by City of Hazleton v. Lozano,* 563 U.S. 1030 (2011); *see also Hispanic Int. Coal. of Ala. v. Governor of Ala.*, 691 F.3d 1236, 1247 n.8 (11th Cir. 2012) (collecting cases). This is particularly so for asylum seekers discussing aspects of their asylum claims, given the serious risk of harm to the individuals and their families associated with revealing their identities. *See, e.g.*, *Kiakombua v. McAleenan*, No. 19-cv-1872 (KBJ), 2019 WL 11322784, at *3 (D.D.C. July 3, 2019) (use of pseudonyms appropriate where disclosure of asylum seeker plaintiffs' names would risk serious physical harm to them and risk "intensify[ing] the violence and persecution directed at them and their families"); *O.A. v. Trump*, No. 1:18-cv-02718, 2018 WL 11249801, at *3 (D.D.C. Nov. 20, 2018) (similar); *Grace v. Sessions*, No. 1:18-cv-01853, 2018 WL 11247769, at *3 (D.D.C. Aug. 7, 2018) (recognizing asylum seekers "fall within a particularly vulnerable class of migrants for whom confidentiality about the nature and existence of their claims is particularly important," and permitting use of pseudonyms (internal quotation

4

marks omitted)).  Notably, immigrant beneficiaries who challenged the termination of the CAM parole program were permitted to use pseudonyms, *see generally S.A. v. Trump*, No. 18-cv-03539-LB, 2018 WL 3054794 (N.D. Cal. June 19, 2018), as were immigrant beneficiaries who sought to intervene to defend the Deferred Action for Parents of Americans program from legal attack, *see generally Texas v. United States*, 805 F.3d 653 (5th Cir. 2015).  In this case, Proposed Intervenors reasonably fear serious harm to their families and themselves if their identities are revealed in connection with this case, as described below.

3. **Proposed Intervenors and Their Families May Face Threats of Violence If Not Permitted to Use Pseudonyms**

   A. **Revealing Proposed Intervenors' Names May Increase the Danger to Their Families in El Salvador and Honduras and Place Proposed Intervenors in Danger if They Are Forced to Return**

Proposed Intervenors fear that their family members in El Salvador and Honduras may be targeted by gang members or other bad actors if Proposed Intervenors' identities are revealed.  *See* Jesus Decl. ¶¶ 32-34, App'x at 14-15; Uzias Decl. ¶¶ 32-34, App'x at 52-53; Rosa Decl. ¶¶ 35-37, App'x at 28-29; Timoteo Decl. ¶¶ 29-31, App'x at 40-41.[2]  In particular, Proposed Intervenors understand that gang members in El Salvador and Honduras commonly seek out individuals with relatives in the United States and threaten them with violence if they do not pay large sums of money.  Jesus Decl. ¶ 32, App'x at 14-15; Rosa Decl. ¶ 35, App'x at 28; Timoteo Decl. ¶ 29, App'x at 40.  Proposed Intervenors also understand that gang members and other bad actors commonly retaliate against people who publicly discuss their crimes, *see* Timoteo Decl. ¶ 30, App'x at 41, as several of Proposed Intervenors do in this case, *see* Timoteo Decl. ¶¶ 19-20, 29, App'x at 39; Uzias Decl. ¶¶ 17-18, 33, App'x at 51-53; Rosa Decl. ¶ 37, App'x at 29.  In addition,

---

[2] All citations to Proposed Intervenors' Declarations are to the English translations in the Appendix.

Proposed Intervenors understand that gang members and other bad actors often retaliate against people for trying to leave El Salvador or Honduras—as Proposed Intervenors' children seek to do through the CAM Program. *See* Jesus Decl. ¶ 33, App'x at 15; Uzias Decl. ¶¶ 18, 30-32, App'x at 51-53 (discussing concern that people who threatened his life and the lives of his minor children will retaliate against his children for trying to leave El Salvador).

Proposed Intervenors' fears are objectively reasonable. Some Proposed Intervenors and their family members already have received death threats or other violent threats. *See* Uzias Decl. ¶¶ 18-19, App'x at 51; Rosa Decl. ¶ 14, App'x at 26; Timoteo Decl. ¶ 19, App'x at 39. That gang members target children of people living in the United States for extortion, and that they respond with deadly violence if families do not pay, is well-documented. *See, e.g.*, Evarts Decl., Ex. M, App'x at 191, 194-95 (gangs target family members of people who left Central America); *id.*, Ex. N, App'x at 216 (same); *id.*, Ex. O, App'x at 275 (same); *see also id.*, Ex. W, App'x at 327-29 (gangs began extorting and threatening to kidnap family members of immigrants in U.S. after media reports that U.S. government considering compensation to immigrants in connection with family separation policy). It is also well-documented that gang members target their critics and their critics' families with violence. *See id.*, Ex. M, App'x at 193-94, 196 (gangs target individuals who challenge them and their family members with "violent, punitive, and publicly visible response"). Law enforcement may fail to investigate or protect against threats to targets of gang members. *See id.*, Ex. P, App'x at 296-98 (Salvadoran government turns a blind eye to gangs "disappear[ing]" citizens); *id.*, Ex. M, App'x at 199 (most gang victims do not report violence for fear of retaliation against themselves and their families, but those who do "confront the unwillingness or inability of the state to provide either protection or justice"); *see also* Rosa Decl. ¶¶ 17-18, App'x at 26 (police failed to investigate her brother's murder). Revealing Proposed

6

Intervenors' identities in this case could place their family members in grave danger of violence, extortion, or even death.

Proposed Intervenors also fear for their own safety. They do not have permanent status in the United States; they may be required to leave the United States and to return to live in Central America in the future. Timoteo Decl. ¶¶ 3, 31, App'x at 38, 41; Rosa Decl. ¶¶ 4, 36, App'x at 25, 29; Jesus Decl. ¶¶ 3, 34, App'x at 12, 15; Uzias Decl. ¶¶ 3, 33, App'x at 50, 53. They understand that Salvadorans and Hondurans who return to live in Central America after spending years in the United States are targeted by gangs for extortion and that they or their families may be violently attacked if they are unable to pay. Timoteo Decl. ¶ 31, App'x at 41; Rosa Decl. ¶ 36, App'x at 29; Jesus Decl. ¶ 34, App'x at 15. And they fear that the bad actors who previously threatened them with death or attacked their family members will seek retribution against Proposed Intervenors for discussing those crimes in this case. Rosa Decl. ¶ 37, App'x at 29 (discussing concern that people who murdered her brother will try to retaliate against her and family); Uzias Decl. ¶ 33, App'x at 53 (discussing concern that people who threatened his life will retaliate against him and his family). In short, Proposed Intervenors fear that publicly revealing their identities increases the risk of harm to them if they must return to Central America, as well as to their family members living in Central America. Timoteo Decl. ¶¶ 29-31, App'x at 40-41; Rosa Decl. ¶¶ 35-37, App'x at 28-29; Jesus Decl. ¶ 34, App'x at 15; Uzias Decl. ¶ 33, App'x at 53. These fears are objectively reasonable as well. *See* Evarts Decl., Ex. X, App'x at 421-25 (describing dangers long-time residents of U.S. face after being deported back to El Salvador); *see also* Timoteo Decl. ¶ 32, App'x at 41 (describing friend who was extorted and whose brother was murdered by gangs after the friend returned to El Salvador).

Courts regularly permit the use of pseudonyms in similar circumstances. *See, e.g.*, *C.M. v. United States*, No. SA-21-CV-00234-JKP, 2021 WL 1822305, at *3 (W.D. Tex. Mar. 31, 2021) (pseudonym permitted where concerns about Central American gang members' violent retaliation against plaintiff and his child); *D.G.L. v. Collins*, No. A-20-CV-1126-RP-SH, 2020 WL 10355163, at *1 (W.D. Tex. Nov. 18, 2020) (same where party's family and friends faced threat of gang retaliation); *Doe v. INS*, 867 F.2d 285, 286 n.1 (6th Cir. 1989) (same where party's family faced possible violence in China); *Doe v. U.S. Citizenship and Immigr. Servs.*, No. 1:21-cv-00576-NONE-SAB, 2021 WL 1907562, at *4 (E.D. Cal. May 12, 2021) (same where party was concerned for his own safety if he returned to Yemen, as well as for the safety of his family in Russia and Chechnya, and collecting cases). In determining whether use of a pseudonym is warranted, courts consider the threat of violence to "innocent non-parties," such as Proposed Intervenors' children and family members, as "even more critical[]" to the analysis than harm to the parties themselves. *See, e.g.*, *In re Sealed Case*, 931 F.3d 92, 97 (D.C. Cir. 2019); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008); *James v. Jacobsen*, 6 F.3d 233, 238 (4th Cir. 1993). In sum, the threat of harm to Proposed Intervenors' family members in Central America and to Proposed Intervenors themselves if their names are disclosed weighs strongly in favor of permitting the use of pseudonyms. *See Stegall*, 653 F.2d at 186.

### B. Revealing Proposed Intervenors' Names May Expose Them and Their Families in the United States to Violence

Proposed Intervenors reasonably fear that public revelation of their immigration status and connection with the CAM Program would render them and their families in the United States vulnerable to harassment and violence. *See* Jesus Decl. ¶¶ 33-34, App'x at 15; Rosa Decl. ¶ 38, App'x at 29.

The highly charged public debate around immigration in some of the Plaintiff States is well documented, *see* Evarts Decl., Ex. Q, App'x at 301-04 (Texans "reckoning" with politicians' anti-immigrant rhetoric in wake of 2019 shooting that targeted Latinx community), as is the rise in hate crimes against Latinx people there, *id.*, Ex. R, App'x at 307; *see, e.g.*, Ex. S, App'x at 314-15. Plaintiffs have expressly linked their legal challenge to the CAM Program to the broader national debate about immigration into the United States, *see, e.g.*, Am. Compl. ¶¶ 1-3, 7, 78-84, and to Plaintiffs' highly visible efforts to restrict such immigration, *see, e.g.*, Evarts Decl., Ex. T, App'x at 317 (describing instant challenge to CAM as "9th Border-Crisis Lawsuit Against Biden"). And, Plaintiffs have erroneously alleged that CAM applicant parents are unlawfully in the United States, *see, e.g.*, Am. Compl. ¶¶ 3, 7,[3] sowing confusion about the nature of the program and its beneficiaries and suggesting that Proposed Intervenors and others like them are breaking the law. This occurs against a backdrop of politicians previously denouncing CAM in inflammatory language designed to elicit public fear of CAM beneficiaries. *See, e.g.*, Evarts Decl., Ex. V, App'x at 322-23 (former Florida congressman Rich Nugent describing CAM beneficiaries as gang members coming from a "culture of murder").

In this context, revealing Proposed Intervenors' immigration statuses and their attempts to defend the CAM Program from legal attack by their states "invite[s] an opprobrium analogous to the infamy associated with criminal behavior," such that Proposed Intervenors risk "extensive harassment and perhaps even violent reprisals." *Stegall*, 653 F.2d at 186 (threats of violence resulting from hostile public reaction to participation in lawsuit weighed in favor of permitting pseudonyms); *see also Al Otro Lado, Inc. v. Nielsen*, No. 17-cv-02366-BAS-KSC, 2017 WL

---

[3] *See also* Ex. U, App'x at 319-20 (in press release describing instant challenge, describing CAM Program as "a massive government airlift operation for illegal aliens' relatives living abroad").

9

6541446, at *4 (S.D. Cal. Dec. 20, 2017) (observing that "various courts have permitted the use of pseudonyms to protect a party from third-party retaliation" and granting pseudonym motion).

### 4. Identifying Proposed Intervenors May Expose Vulnerable Minors to Harm

Related to the risk of harm to Proposed Intervenors and their family members in Central America, disclosure of Proposed Intervenors' identities is associated with the risk of disclosing the identities of their vulnerable minor children in the United States and in Central America. In addition to the serious protection concerns discussed *supra*, disclosure of minors' identities would undermine the protections for minor privacy codified in the Federal Rules, *see* Fed. R. Civ. P. 5.2(a), and this also weighs in favor of permitting the use of pseudonyms, *see C.M.*, 2021 WL 1822305, at *2; *see also Stegall*, 653 F.2d at 186.

### 5. Proposed Intervenors' Need for Anonymity Outweighs Any Prejudice to the Parties and the Public Interest

Finally, permitting Proposed Intervenors to proceed anonymously will not prejudice Plaintiffs' ability to prosecute this case or Defendants' ability to mount a defense—as Defendants recognize in consenting to this motion. With respect to Plaintiffs, courts have recognized that challenges testing the "constitutional, statutory, or regulatory validity of government activity" often present questions of law, and "involve no injury to the Government's reputation." *See S. Methodist Univ.*, 599 F.2d at 713 (internal quotation marks omitted); *see also Sealed Plaintiff*, 537 F.3d at 190 ("there is an atypically weak public interest in knowing the litigants' identities" where the issues presented are of a "purely legal nature" (internal quotation marks omitted)); *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 112 (E.D.N.Y. 2003) (in an action against the government, "personal anonymity is more readily granted because of the existence of a public interest in the action and a lesser interest in personal reputation."). As discussed *supra*, this case does not implicate

10

reputational concerns for the parties, not least because Proposed Intervenors seek to *defend* the CAM Program against Plaintiffs' legal attack.

Moreover, the public interest is served by ensuring that Proposed Intervenors can be heard on this issue of public importance. *See Doe v. Hood*, No. 3:16-CV-00789-CWR-FKB, 2017 WL 2408196, at *2 (S.D. Miss. June 2, 2017) (public's interest in case challenging government policy "pertains more to [the case] outcome than to its individual participants"). Proposed Intervenors have carefully avoided speaking publicly about their immigration status and guarded their identities because of their concerns about the risk of danger to their families and themselves. Timoteo Decl. ¶ 33, App'x at 41-42; Rosa Decl. ¶ 39, App'x at 29; Jesus Decl. ¶ 36, App'x at 15-16; Uzias Decl. ¶ 35, App'x at 53. The public's interest in Proposed Intervenors' identities is *de minimis* compared to their and their families' strong interests in anonymity. *See C.M.*, 2021 WL 1822305, at *2. In short, Proposed Intervenors' privacy interests in using pseudonyms far outweighs any risk of prejudice to the parties or the public interest.

## CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully request that the Court grant this Motion and permit Proposed Intervenors to proceed under pseudonyms.

Dated:   March 22, 2022                           Respectfully submitted,

| | |
|---|---|
| /s/ Debra J. McComas | /s/ Linda B. Evarts |
| Debra J. McComas | Linda B. Evarts (NYS Bar #5236948)* |
| HAYNES & BOONE LLP | Kathryn C. Meyer (NYS Bar #5504485)* |
| State Bar No. 00794261 | Mariko Hirose (NYS Bar #4802674)* |
| 2323 Victory Ave., Suite 700 | INTERNATIONAL REFUGEE |
| Dallas, Texas 75219 | ASSISTANCE PROJECT |
| Tel. (214) 651-5000 | One Battery Park Plaza, 4th Floor |
| Fax (214) 651-5940 | New York, NY 10004 |
| *debbie.mccomas@haynesboone.com* | Tel. (516) 838-1655 |
| | Fax: (929) 999-8115 |
| | *levarts@refugeerights.org* |
| | *kmeyer@refugeerights.org* |
| | *mhirose@refugeerights.org* |

*pro hac pending*

***Counsel for Proposed Defendant-Intervenors***


## CERTIFICATE OF CONFERENCE

On March 16, 2022, Proposed Intervenors' counsel conferred with counsel for Plaintiffs concerning this motion. The identities of the attorneys conferring were as follows: Ryan Walters, Michelle Ghetti, and Joseph Scott St. John for the Plaintiffs, and Linda B. Evarts, Kathryn C. Meyer, Mariko Hirose, and Debra J. McComas for the Proposed Intervenors. Plaintiffs' counsel opposed the motion.

On March 16, 2022, Proposed Intervenor's counsel conferred with counsel for Defendants concerning this motion. The identities of the attorneys conferring were as follows: Erez Reuveni and Joseph Darrow for the Defendants, and Linda B. Evarts, Kathryn C. Meyer, Mariko Hirose, and Debra J. McComas for the Proposed Intervenors. Defendants' counsel consented to the motion.

/s/ *Linda B. Evarts*
Linda B. Evarts

## CERTIFICATE OF SERVICE

      The undersigned certifies that on March 22, 2022, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the CM/ECF system. I hereby certify that I have served the document on all counsel by a manner authorized by Federal Rule of Civil Procedure 5(b)(2) via the Court's CM/ECF filing system.

      /s/ *Debra J. McComas*
      Debra J. McComas