**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |
|---|---|
| **STATE OF TEXAS,** *et al.,* | |
| *Plaintiff,* | |
| v. | **Civ. Action No. 3:22-cv-00780-M** |
| **JOSEPH R. BIDEN, JR.,** *et al.,* | |
| *Defendants.* | |

**PLAINTIFF STATES' RESPONSE IN OPPOSITION**
**TO MOTION TO INTERVENE**
**FILED BY JESUS, ROSA, TIMOTEO, AND UZIAS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ 2

TABLE OF AUTHORITIES ................................................................... 3

I.     SUMMARY OF ARGUMENT ......................................................... 5

II.    THE PUTATIVE INTERVENORS ARE NOT ENTITLED TO INTERVENE
       AS A MATTER OF RIGHT ............................................................. 8

       A.     Some Of the Putative Intervenors' Claims Are Precluded .............. 8

       B.     The Putative Intervenors' Motion Is Not Timely ........................... 11

       C.     The Putative Intervenors Interests Are Adequately
              Represented by the Defendants ......................................... 13

III.   THE PUTATIVE INTERVENORS SHOULD NOT BE GRANTED
       PERMISSIVE INTERVENTION ...................................................... 19

IV.    CONCLUSION ......................................................................... 22

CERTIFICATE OF SERVICE ............................................................. 23

# TABLE OF AUTHORITIES

## CASES

*Argueta v. U.S. Immigration and Customs Enforcement*,
  2009 WL 1307236, *10 (D. N. J. 2009) ............................................... 7

*Armstrong v. O'Connell,* 74 F.R.D. 429, 432 (E.+D. Wis. 1977) .......................... 11

*Brackeen v. Zinker*, 2018 WL 10561984, *4 (N. D. Tex. 2018) ............................ 15

*Brumfield v. Dodd*, 749 F. 3d 339, 341 (5th Cir. 2014) ........................ 8, 13, 18, 19

*Bush v. Viterna*, 740 F. 2d 350, 359 (5th Cir. 1984) ............................................ 21

*Daggett v. Comm'n on Governmental Ethics & Election Practices*,
  172 F. 3d 104, 112 (1st Cir. 1999) .................................................................... 17

*Davis v. Lifetime Capital, Inc.,*
  3:04-CV-00059, 2014 WL 1271149, at *2 (S.D. Ohio Mar. 27, 2014) ........................ 13

*Doe v. Duncanville Indep. Sch. Dist.*, 994 F. 2d 160, 168 (5th Cir. 1993) ........... 16

*Doe v. McKesson*, 945 F. 3d 818 (5th Cir. 2019) ...................................................... 7

*Doe v. Stegall*, 653 F. 2d 180, 185 (5th Cir. 1981) .................................................... 7

*Edwards v. City of Houston*, 78 F. 3d 983, 1005 (5th Cir. 1996) .................. 14, 19

*Entergy Gulf States La., L.L.C. v. EPA*,
  817 F. 3d 198, 204–05 (5th Cir. 2016) ............................................................ 18

*Franciscan Alliance, Inc. v. Burwell*,
  2016 WL 9281524 (N.D. Tex. 2016) .................................................................. 11

*Gratz v. Bollinger*, 183 F.R.D. 209, 215 (E.D. Mich. 1998) ................................. 12

*Hopwood v. State of Texas*, 21 F. 3d 603 (5th Cir. 1994) ............................... 12, 16

*Ingebretsen v. Jackson Pub. Sch. Dist.*,
  88 F. 3d 274, 281 (5th Cir. 1996) ........................................................ 16, 20, 21

*In re DeLap*, 44 B.R. 21 (BANKR. W. D. WIS. 1984) ............................................... 12

*June Medical Services, LLC v. Phillips*, 22 F. 4th 512, 520 (5th Cir. 2022) ........... 7

*League of Women Voters of Michigan v. Johnson*,
　　2:17-CV-14148, 2018 WL 6272041, at *1 (E.D. Mich. Nov. 30, 2018) ........... 12

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
　　732 F. 2d 452, 470–71 (5th Cir. 1984) ...................................................... 20, 21

*Pruett v. Harris Cnty. Bail Bond Bd.*, 104 F. App'x 995, 997 (5th Cir. 2004) ..... 20

*S.A. v. Trump (Trump II),*
　　No. 18-cv-03539, 2019 WL 990680 (N.D. Cal. Mar. 1, 2019) ..................... 8, 10

*S.A. v. Trump (Trump I),*
　　363 F. Supp. 3d 1048, 1055 (N.D. Cal. 2018) ..................................................... 9

*S.A. v. Trump (Trump III),*
　　No. 18-cv-03539, 2019 WL 1593229 (N.D. Cal. 2019) ...................................... 5

*Staley v. Harris Cnty., Tex.*, 160 F. App'x 410, 414 (5th Cir. 2005) .................... 20

*Stallworth v. Monsanto Co.,* 558 F. 2d 257, 265 (5th Cir. 1977) ......................... 11

*Texas v. United States*, 805 F. 3d 653, 662-63 (5th Cir. 2015) ........... 13, 14, 17, 18

*United Airlines, Inc. v. McDonald,* 432 U.S. 385, 394 (1977) .............................. 12

*U.S. Commodity Futures Trading Commission v. Privatefx Global One*,
　　2010 WL 11468801 (S.D. Tex. 2010) ................................................................ 11

*United States v. S. Fla. Water Mgmt. Dist.*,
　　922 F. 2d 704, 711–12 (11th Cir. 1991) ........................................................... 21

*United States v. Tex. E. Transmission Corp.*,
　　923 F. 2d 410, 416 (5th Cir. 1991) ................................................................... 20

*Veasey v. Perry*, 577 Fed. Appx. 261, 262 (5th Cir. 2014) ................................ 8, 14

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
　　834 F. 3d 562, 569 (5th Cir. 2016) ................................................................... 18

## Statutory Laws

Fed. R. Civ. P. 24 ............................................................................ passim

## I. Summary of Argument

The Putative Intervenors, using the pseudonyms "Jesus," "Rosa," "Timoteo," and "Uzias"[1] (collectively, the "Putative Intervenors") present a rather complicated request to intervene in this straightforward predominantly Administrative Procedure Act (APA) case. They do not qualify for intervention as a matter of right under Rule 24(a) of the Federal Rules of Civil Procedure, nor do they merit permissive intervention under Rule 24(b).

As to intervention of right, the claims for parole of at least two of the four Putative Intervenors' (Jesus and Rosa) under the Central American Minors (CAM) Program[2] have already been granted and are, therefore, *res judicata* and precluded from revisitation by this Court. *See S.A. v. Trump*, No. 18-cv-03539, 2019 WL 1593229 (N.D. Cal. 2019) (*S.A. III*). Additionally, the California District Court granting that relief maintains continuing jurisdiction over enforcement of the injunction granted in the case. Any concern that Jesus and Rosa have that their sons might not arrive in the United States in the future[3] must be litigated in the Northern District of

---

[1] These are not the actual names of the Putative Intervenors. A Motion to Proceed Under Pseudonyms has been filed by the Putative Intervenors and the Court has not yet requested a response. *See* Order dated March 29, 2022, requesting only a response to the Motion to Intervene. ECF 29. Answering that motion adds an additional, collateral, unnecessary, and burdensome issue to the case, a fact also weighing against intervention. *See* discussion at p. 17.

[2] There are three iterations of the CAM Program: 1) the CAM Program under the Obama Administration, 2) the termination of the parole portion of the CAM Program by the Trump Administration which was reversed in part by the Northern District of California, and 3) the CAM Program under the Biden Administration. Each of these iterations are different. This lawsuit only relates to the Biden Administration's CAM Program.

[3] It is unclear from the Putative Intervenors' motion whether Rosa's son is still in El Salvador or whether he is now in the United States. In her affidavit, however, she admits that her son arrived in the United States in September 2021. Thus, her entire family appears to be now in the United States.

California, not here. In addition to *res judicata* and the lack of jurisdiction of this court over their claims, the prior relief certainly removes any "interest relating to" the subject matter of this lawsuit.

Second, the Putative Intervenors' motion is not timely—it is premature. President Biden and his administration have not even filed an answer in this case.[4] There have been no motions filed—injunctive or otherwise. No administrative record has been filed. It is simply premature, at this early point, for the Putative Intervenors to assert that President Biden and his administration will *not* adequately represent their interests or that they do not share the same ultimate objective. Without knowing the Defendants' position, they cannot possibly carry their burden at this time.

Third—even if their motion is timely—the Putative Intervenors do not carry their burden to show that their interests diverge from those of President Biden and his administration or that he will not adequately represent their interests while defending his prized program. Rather, they share the same ultimate objective to have this Court uphold the Biden CAM Program in all its respects. The thrust of the Putative Intervenors' argument is that they should be allowed to intervene for "humanitarian" reasons. But there is no *legal* basis for intervention to represent humanitarian concerns and, even if there were, as the Putative Intervenors recognize, President Biden and his administration *must* represent those interests in defending their program—the CAM program explicitly requires it (refugee officers

---

[4] The Defendants' Answer is due May 8, 2022.

must consider whether an applicant qualifies for parole for "urgent humanitarian reasons"). There is simply no reason to believe that, to the extent humanitarianism is relevant, the Defendants will not represent those interests of the Putative Intervenors while pursuing the same shared objective of having the Program upheld *in toto*.

For the same reasons, the Putative Intervenors should not be granted permissive intervention under Rule 24(b). At the outset, the existence of parties that adequately represent the Putative Intervenors' interests—President Biden and his administration—undercuts their permissive-intervention request. Their intervention adds no benefit to this case and, to the extent they have personal information that might be useful to the Court, that interest can be appropriately served with an *amicus* brief. Beyond that, the addition of the Putative Intervenors as parties to this case would inject unnecessary factual and witness credibility issues into an otherwise straightforward APA case thereby forcing the Plaintiff States, the Defendants, and the Court to expend unnecessary time and resources responding to their arguments.[5]

---

[5] For example, the first additional issue that their intervention will inject into this case is whether the Putative Intervenors should be allowed to proceed anonymously. Without waiving any right to further respond when this Court requests, Plaintiff States would point out that "[p]ublic access to this information is more than a customary procedural formality; First Amendment guarantees are implicated when a court decides to restrict public scrutiny of [any aspect of] judicial proceedings." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981). *See also Doe v. McKesson*, 945 F.3d 818 (5th Cir. 2019) (affirming denial of pseudonyms) *rev. on other grounds McKesson v. Doe*, 141 S.Ct. 48 (2020) ("What transpires in the court room is public property") (internal citation omitted). "[N]on-disclosure of identity of [Putative Intervenors] undermines public confidence and trust." *Argueta v. U.S. Immigration and Customs Enforcement*, 2009 WL 1307236, *10 (D. N. J. 2009). It is an "exceptional case in which the need for party anonymity overwhelms the presumption of disclosure mandated by procedural custom." *Stegall*, 653 F.2d. at 185. Additionally, Plaintiffs have a due process right to know the identity of opposing parties. *Argueta*, 2009 WL 1307236, *10.

Furthermore, parties are not allowed "to proceed anonymously based on generalized concerns." *June Medical Services, LLC v. Phillips*, 22 F.4th 512, 520 (5th Cir. 2022). "It is the solemn duty of the judge to scrupulously examine [the basis for anonymity]. It is not easy, but it is fundamental." *Id*. at 521. All

Should it appear that their interests are not being adequately represented by President Biden and his administration in the future, nothing forecloses them from applying for intervention at that time.

## II. THE PUTATIVE INTERVENORS ARE NOT ENTITLED TO INTERVENE AS A MATTER OF RIGHT

A party seeking to intervene as of right must satisfy four requirements:

(1) the application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Veasey v. Perry*, 577 Fed. Appx. 261, 262 (5th Cir. 2014) (per curiam) citing *Brumfield v. Dodd*, 749 F. 3d 339, 341 (5th Cir. 2014) (citations omitted); Fed. R. Civ. P. 24(a)(2). The Putative Intervenors fail to meet these requirements in at least three different ways.

### A. Some of the Putative Intervenors' Claims Are Precluded

As acknowledged by the Putative Intervenors, the CAM parole claims for the children of at least two of the four Putative Intervenors (Jesus and Rosa), have already been granted. *See* ECF 19, p. 226 (Jesus and Rosa are "*S.A.* settlement beneficiaries") (citing *S.A. v. Trump,* No. 18-cv-03539, 2019 WL 990680 (N.D. Cal. Mar. 1, 2019) (*S.A. II*)). In *S.A.,* the plaintiffs were "parents lawfully residing in the

---

four of the Putative Intervenors request anonymity, each for different reasons. The facts surrounding the need for anonymity must be "scrupulously examined" to determine source, credibility, severity, context, and more. This requires a hearing and could require discovery. It is a time-consuming process that will complicate and further delay a straightforward proceeding and create additional and unnecessary burdens on Plaintiff States.

United States who applied to the CAM Program,[6] their beneficiary children in Northern Triangle countries, and the nonprofit immigrant rights organization, CASA." *See S.A. v. Trump*, 363 F. Supp. 3d 1048, 1055 (N.D. Cal. 2018) (*S.A. I*). They filed a putative class action suit against the same departments as in this lawsuit.

The plaintiffs there alleged that the government's termination of the CAM Parole Program and its rescission of conditional approvals of parole were unlawful. They requested a preliminary injunction, and the defendants filed a motion to dismiss. The court considered the motion to dismiss first and allowed the plaintiffs' APA claims as they related to the government's mass rescission of conditional approvals of parole to move forward but dismissed all other claims by plaintiffs, including the termination of the CAM Program. *See S.A. I*, 363 F. Supp. 3d at 1055, 1096. Less than three months later, the court granted the motion for preliminary injunction and 1) vacated DHS's "decision to mass-rescind conditional approvals for the 2,714 beneficiaries conditionally approved for parole but who had not traveled to the United States;" 2) ordered DHS to "continue the post-conditional-approval processing for those beneficiaries under the policies and procedures that it had in place prior to January 2017;"[7] 3) enjoined DHS from "adopting any policy, procedure, or practice to not process the beneficiaries or to place their processing on hold en masse;" and 4) ordered DHS to submit a "plan for resuming processing of those 2,714

---

[6] Counsel for the Putative Intervenors, the International Refugee Assistance Project, Linda Evarts, Kathryn Meyer, and Mariko Hirose in particular, represented the parents and children in *S.A.* and participated in the court implemented settlement agreement ultimately agreed to.

[7] https://www.uscis.gov/archive/central-american-minors-cam-information-for-parole-applicants.

beneficiaries with benchmarks for assessing compliance." *S.A. II*, 2019 WL 990680, *13–14.

A little over two months later, the parties entered into a Binding Memorandum of Agreement which was subsequently adopted as an Order of the Court (ECF 91) and, on May 17, 2019 the Court entered its Stipulated Final Judgment and Order for Permanent Injunction in the case issuing a final injunction on the above terms and, in accordance with the parties agreement, retaining "continuing jurisdiction to enforce [the permanent] injunction and the Parties' Agreement." *S.A.*, No. 18-cv-03539, ECF 99 at 4. The Defendants have since filed twelve quarterly reports setting forth the problems, especially caused by COVID-19 travel and quarantine restrictions in the United States and the Northern Triangle countries, in getting medical exams, approvals, and travel over the two years following the entry of the final judgment.[8] As of March 14, 2022, 2051 applicants have been directly notified of their approval for parole, 2,031 have received medical exams, 1,665 have been cleared for travel, and 1,578 applicants have travelled to the United States. *See S.A*, No. 18-cv-03539, ECF 114. Although Jesus' son, apparently, has not yet travelled to the United States, he still has the right to come here protected under the final judgment in *S.A.*

As the Putative Intervenors recognize, Jesus, Rosa, and their sons are intended beneficiaries of the *Obama* CAM Program. Their claims to parole pursuant to that program have been recognized and protected pursuant to the final judgment of the U.S. District Court for the Northern District of California in *S.A. v. Trump*. These

---

[8] *See* Quarterly Reports at ECF 102-114.

claims are, therefore, *res judicata* and thus precluded from revisitation by this Court. The Northern District of California maintains continuing jurisdiction over enforcement of the injunction it granted in that case. Any concern that Jesus has that his son might not arrive in the United States in the future must be litigated there.

### B.   The Putative Intervenors' Motion Is Not Timely[9]

Whether Jesus and Rosa's motion is subject to claim preclusion or an objection to the jurisdiction of this court, they—and Timoteo and Uzias—have filed their motion prematurely.

The Fifth Circuit has cautioned against granting premature motions to intervene, because there may not be enough reliable information early in the lawsuit to evaluate the motion. *See Stallworth v. Monsanto Co.,* 558 F. 2d 257, 265 (5th Cir. 1977). Numerous courts have denied motions to intervene on that ground. *See, e.g.,* *Franciscan Alliance, Inc. v. Burwell*, 2016 WL 9281524 (N.D. Tex. 2016) ("considering the motion to intervene after Defendants file their answer will 'provide the Court with enough information to determine whether the Putative Intervenors have met their burden to show that their interests are inadequately represented."); *U.S. Commodity Futures Trading Commission v. Privatefx Global One*, 2010 WL 11468801 (S.D. Tex. 2010) ("Since the Receiver has yet to file a plan for distribution, the court agrees that intervention would be premature."); *Armstrong v. O'Connell,* 74 F.R.D.

---

[9] The Plaintiff States here raise the prematurity of the motion as part of their timeliness argument but also realize that many courts only consider *dilatory* filings as "untimely." All courts recognize, however, that the prematurity of the filing contributes to intervenors inability to prove that one of the parties will not adequately represent their interests. The Plaintiff States reargue the prematurity of the filing, again, in Part C of this Response.

429, 432 (E.D. Wis. 1977) ("The critical inquiry here is whether or not on the facts of this case the petition is premature."); *League of Women Voters of Michigan v. Johnson*, 2:17-CV-14148, 2018 WL 6272041, at *1 (E.D. Mich. Nov. 30, 2018) ("Legislative Intervenors' Motion is premature, because they merely 'speculate about the 'possibility' that the executive branch will end its participation in this matter.'"); *Gratz v. Bollinger*, 183 F.R.D. 209, 215 (E.D. Mich. 1998), *rev'd sub nom. Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999); *Hopwood v. State of Texas,* 21 F.3d 603 (5th Cir. 1994) (denying motion for intervention on behalf of the Thurgood Marshall Legal Society and the Black Pre–Law Association in a lawsuit challenging the University of Texas Law School's affirmative action program); *In re DeLap*, 44 B.R. 21 (Bankr. W. D. Wis. 1984) citing *United Airlines, Inc. v. McDonald,* 432 U.S. 385, 394 (1977) ("As soon as First learned that its interests would no longer be protected by the Trustee, it moved to intervene. Accordingly, the motion to intervene was timely. Indeed, an earlier motion would have been premature.").

The Fifth Circuit's words of caution should be persuasive here. There is not enough reliable information, at this point, to evaluate the motion. The Defendants have not even filed an answer in this case.[10] While the Putative Intervenors have filed a proposed answer, there is nothing to compare it to. There have been no motions—injunctive or otherwise. The Defendants have not filed an administrative record. There is simply no way to determine, at this early point, whether the Defendants will adequately represent the interests of the Putative Intervenors or if

---

[10] The Defendants' Answer is due on May 8, 2022.

they have the same ultimate objective. The Putative Intervenors carry the burden of proving that their interests diverge from the Defendants' interests. Without knowing the position of the Defendants, they cannot carry that burden. This is because their Motion to Intervene has been prematurely filed.[11]

## C. The Putative Intervenors Interests Are Adequately Represented by the Defendants

To meet the fourth requirement of mandatory intervention, the Putative Intervenors must do more than identify a purported harm to their interests that would be inflicted by the remedies sought in this suit. Instead, they bear the burden to demonstrate "that the representation of [their] interest [by the existing parties] may be inadequate." *Texas v. United States*, 805 F.3d 653, 661 (5th Cir. 2015) (citations and quotations omitted); *Brumfield*, 749 F.3d at 341 (citation and quotations omitted). The Putative Intervenors must overcome two presumptions of adequate representation.   The first presumption arises where "the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Texas*, 805 F.3d at 662-63 (citation omitted). If the first presumption applies, "the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Id.*

The second presumption arises "when the putative representative is a governmental body or officer charged by law with representing the interests of the

---

[11] The Putative Intervenors can always file a motion to intervene once it becomes evident that their interests are not being adequately represented. *Davis v. Lifetime Capital, Inc.,* 3:04-CV-00059, 2014 WL 1271149, at *2 (S.D. Ohio Mar. 27, 2014) ("A court cannot squeeze a proposed intervenor from both ends by first ruling a motion to intervene premature and then ruling a second motion to intervene too late.").

[intervenor]." *Id.* If the second presumption applies, the Putative Intervenors must show "that [their] interest is in fact different from that of the [governmental entity] and that the interest will not be represented by [it]." *Texas*, 805 F.3d at 662 (citations and internal quotation marks omitted). In either case, the Putative Intervenors must carry the burden to prove to the Court that their interest is adverse to or different from that of the Defendants. *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996) (en banc) (citation omitted).

The Fifth Circuit has emphasized that the burden to show inadequate representation "cannot be treated as so minimal as to write the requirement completely out of the rule." *Texas*, 805 F.3d at 661 (citations and quotations omitted). The inadequate representation requirement "must have some teeth." *Veasey*, 577 F. App'x at 263 (affirming denial of motion to intervene). The proper inquiry focuses not on whether there is any variation in the interests of the Putative Intervenors compared to the Defendants, but on whether the same outcome would serve those alleged interests.

In their intervention request, the Putative Intervenors point to harms to them if the parole aspect of the CAM Program is enjoined. In their affidavits, the Putative Intervenors mention a desire to reunite with their family and, in some instances, fear for the safety of their family member(s). They each state that the reason they want to participate in this case is "to defend the CAM program." Putative Intervenors Appendix of Authorities, ECF 21 (Affidavit of Jesus, ECF 21, p. 14; Affidavit of Rosa, ECF 21, p. 28; Affidavit of Timoteo, ECF 21, p. 40; Affidavit of Uzias, ECF 21, p. 52.).

14

The thrust of the Putative Intervenors' argument is that they should be allowed to intervene for "humanitarian" reasons.

The Putative Intervenors "have not demonstrated any reason to think the federal government will not zealously defend its own laws," including the requirement to consider "urgent humanitarian reasons" for granting parole. *Brackeen v. Zinker*, 2018 WL 10561984, *4 (N. D. Tex. 2018). As Vice President, "[President] Biden championed the creation and expansion of … the Central American Minors program, which allowed parents with legal status in the U.S. to apply to bring their children up from Central America to live with them; and the creation of a White House task force to support new Americans and help them integrate into their new homes and communities." He also "spearheaded the administration's efforts in El Salvador, Guatemala, and Honduras—bringing high-level attention to these issues and securing bipartisan support for a $750 million aid package to help the Northern Triangle countries implement critical, concrete reforms." *The Biden Plan for Securing Our Values as a Nation of Immigrants*, Joe Biden for President: Official Campaign Website, https://joebiden.com/immigration/.

As President, Biden has listed immigration as one of his "immediate priorities." *The Biden-Harris Administration Immediate Priorities*, Priorities/The White House, https://whitehouse.gov/priorities/. He has also promised to "order an immediate review of Temporary Protected Status (TPS) for vulnerable populations who cannot find safety in their countries ripped apart by violence or disaster" and to offer "holders who have been in the country for an extended period of time and built lives in the

U.S. ... a path to citizenship...." *Id.* He has appointed his vice-president, Kamala Harris, as his immigration "czar." She has been tasked with finding the "root causes of migration in Central America" based on an executive order from the President. *Fact Sheet: Strategy to Address the Root Causes of Migration I Central America*, Statements and Releases, July 29, 2021, https://www.whitehouse.gov/briefing-room/statements-releases/2021/07/29/fact-sheet-strategy-to-address-the-root-causes-of-migration-in-central-america/.

There is simply no reason to believe that President Biden and his administrative officials, while defending one of their own strongly supported initiatives, will not adequately represent humanitarian interests—including the desires of the Putative Intervenors to be reunited with their children and protect their safety. The Putative Intervenors and the Defendants share in the same ultimate objective: to have President Biden's newly created Central American Minors Program upheld. *See, e.g.*, *Doe v. Duncanville Indep. Sch. Dist.*, 994 F. 2d 160, 168 (5th Cir. 1993) (affirming denial of motion to intervene by class of schoolchildren who sought "the same outcome" as defendant school district); *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F. 3d 274, 281 (5th Cir. 1996) (noting that the Attorney General, in defending the statute at issue, could assert the rights of all Mississippians affected by the law, including the intervenors); *Hopwood*, 21 F. 3d at 605-606 (intervenors argued that the defendants' interests were broader than the intervenors' interests but the Court rejected that because the intervenors had not demonstrated that the defendant would

not strongly defend its program nor had they shown they had a separate defense of the program that the defendant was failing to assert.)

To answer that, the Putative Intervenors assert that the Federal Defendants may not "fully represent" their interests because "as government entities and officials, they must represent the broad public interest." ECF No. 19 at 16. But both the Fifth and First Circuits have held that a putative intervenor must assert more than a general or abstract claim of a broader public interest. *See, e.g., Texas*, 805 F.3d at 663; *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 112 (1st Cir. 1999). The Putative Intervenors must "connect the allegedly divergent interests with any concrete effects on the litigation." *Texas*, 805 F.3d at 662. They must "demonstrate[] that the [defendants] will not strongly defend its [CAM] program" or that "they have a separate defense of the [CAM Program] that the [defendants] have failed to assert." *Id.* They have not and cannot do this.

The result in *Texas v. United States* is distinguishable from this case. There, prospective DAPA recipients sought to intervene in defense of the challenged deferred-action program. *Texas*, 805 F.3d at 655. The Fifth Circuit allowed the intervention, holding that the Jane Does rebutted any presumption that the federal government adequately represented their interests. *Id.* At 661–63. The Jane Does did so by showing adversity of interest—*i.e.*, that their "interests diverge[d] from the putative representative's interests in a manner germane to the case." *Id.* At 662. The Fifth Circuit pointed to the federal government's position "that the States may refuse to issue driver's licenses to deferred action recipients." *Id.* At 663. This position was

17

"directly adverse to the Jane Does," whose "interest is in working and providing for their families, *for which a driver's license is beneficial.*" *Id.* (emphasis added); *see also Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016) (private association seeking to intervene as defendant did not intend to defend all challenged statutory provisions, whereas the state agency did); *Entergy Gulf States La., L.L.C. v. EPA*, 817 F.3d 198, 204–05 (5th Cir. 2016) (parties' divergent approach on issues germane to the case—whether to stay or bifurcate the proceeding—warranted intervention); *Brumfield*, 749 F.3d at 346 ("[T]he parents are staking out a position significantly different from that of the state, which apparently has conceded the continuing jurisdiction of the district court.").

As argued above, the Defendants have filed no pleadings in this case and, thus, have not evidenced–other than through their public statements and actions to recreate the CAM Program–what their positions in this case will be. Thus, the Putative Intervenors' arguments are without any basis and fail to demonstrate any likelihood they would take any positions adverse to the Federal Defendants, much less that their interests may diverge "in a manner germane to the case." *Texas*, 805 F. 3d at 662–63; *Entergy Gulf States La.,* 817 F.3d at 204–05. Nor have the Putative Intervenors indicated that President Biden and his administration will defend only certain portions of the CAM Program. *See Wal-Mart Stores,* 834 F.3d at 569. Nor can the Putative Intervenors claim that they will more intensely push certain arguments. A review of the Putative Intervenors' Proposed Answer shows no argument, including an affirmative defense, that President Biden and his administration would not be

expected to make. In fact, it indicates a lack of knowledge and information about the issues and facts in the case (a claim of lack of knowledge or information was made 26 times in the Putative Intervenors Proposed Answer). The Putative Intervenors have not shown that their defense of the CAM Program would be "significantly different" on the substance than that of the Defendants in any meaningful way. *See Brumfield,* 749 F.3d at 346. Any speculation as to future contingencies, given that no pleadings have been filed, is not sufficient to overcome the presumption of adequate representation.

Moreover, to the extent that the Fifth Circuit has curtailed in any way the presumption of adequacy of representation when the government is defending a case, *see Edwards*, 78 F.3d at 1005, it has only done so in cases *not* involving a "sovereign interest." But in no area is the "sovereign interest" presumption more relevant than in an immigration case—a subject that involves the apex of acts of sovereignty.  This, alone, should result in a denial of the Purported Intervenors' intervention as a matter of right.

The Putative Intervenors have simply not rebutted the presumptions that the Defendants will adequately represent their interests in this suit; they are, therefore, not entitled to intervene as a matter of right under Rule 24(a) of the Federal Rules of Civil Procedure.

## III.   THE PUTATIVE INTERVENORS SHOULD NOT BE GRANTED PERMISSIVE INTERVENTION.

Likewise, the Putative Intervenors' request for permissive intervention fails. Permissive intervention is "wholly discretionary" and can be denied even if there is a

common question of law or fact. *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 470–71 (5th Cir. 1984) (en banc) ("*NOPSI*"). The Fifth Circuit has "never reversed a denial of permissive intervention." *Ingebretsen*, 88 F.3d at 281 (citation and quotations omitted).[12] At the same time, it has repeatedly affirmed the denial of a permissive-intervention request. *See, e.g., Staley v. Harris Cnty., Tex.*, 160 F. App'x 410, 414 (5th Cir. 2005) (per curiam); *Pruett v. Harris Cnty. Bail Bond Bd.*, 104 F. App'x 995, 997 (5th Cir. 2004) (per curiam).

Rule 24(b) provides that courts "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). And, in exercising their discretion, district courts can consider whether the Putative intervenor will "significantly contribute to full development of the underlying factual issues in the suit." *NOPSI*, 732 F.2d at 472 (citations and quotations omitted).

The Putative Intervenors should not be granted permissive intervention. As discussed earlier, they cannot rebut the presumption of adequate representation. That alone justifies denying their request as unnecessary and needlessly complicating this straightforward APA case. *See, e.g., Staley*, 160 F. App'x at 414 (denial of permissive intervention was proper where another party "adequately represents [intervenor's] interests in this case"); *United States v. Tex. E. Transmission Corp.*, 923 F. 2d 410, 416 (5th Cir. 1991) (same).

---

[12] Plaintiffs are aware of no Fifth Circuit case after *Ingebretsen* reversing a district court's denial of a Rule 24(b) motion.

What is more, the Putative Intervenors add absolutely nothing to this case except undue burden on the other parties and potential delay. *See Ingebretsen*, 88 F.3d at 281 (finding that district court did not err in denying permissive intervention that brought no new issues and would have achieved no purpose aside from delay). Their intervention injects factual, collateral, unnecessary issues, including credibility, into this case and will require additional proceedings burdening Plaintiff States, the Defendants, and the Court. *See United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 711–12 (11th Cir. 1991) (affirming denial of permissive intervention that would have increased the number of witnesses and collateral issues).

In these circumstances, the Fifth Circuit recognized the proper role for such putative intervenors:

> Additional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook Fair. Where he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention.

*Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984) (per curiam) (citation and quotations omitted) (affirming denial of county association's motion for permissive intervention as defendant in statewide challenge to county-jail conditions). That is precisely the situation that the Putative Intervenors' request presents here. Plaintiff State of Texas has no objection to the Putative Intervenors' participation as *amicus curiae. See id.*; *NOPSI*, 732 F. 2d at 473. But intervention is unwarranted.

## IV.   CONCLUSION

Two of the Putative Intervenors have claim preclusion and jurisdictional issues and none of the Putative Intervenors have shown the adversity of interest or differing ultimate objectives needed to overcome the presumptions of adequate representation by President Biden and his administration in this case. Their presence at this point would only needlessly complicate the litigation and add nothing of any substance. The Motion for Intervention should be denied.

Respectfully submitted this the 11th day of April 2022,

GENE P. HAMILTON
Virginia Bar No. 80434
Vice-President
  and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

KEN PAXTON
  Attorney General of Texas
BRENT WEBSTER
  First Assistant Attorney General
AARON REITZ
  Deputy Attorney General for Legal
  Strategy
RYAN D. WALTERS,
  Tx. Bar No. 24105085
  Attorney-in-charge
  Special Counsel, Special Litigation

/s/ *Michelle Ward Ghetti*

_____
MICHELLE W. GHETTI,
  Tx. Bar No. 04342300
Special Counsel for Legal Strategy
Office of the Attorney General
PO Box 12548 (MC 009)
Austin, TX 78711-2548
Tel: (512) 463-4139
Fax: (512) 474-2697
Aaron.Reitz@oag.texas.gov
Ryan.Walters@oag.texas.gov
Michelle.Ghetti@oag.texas.gov

Counsel for the Plaintiff States

22

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on April 11, 2022. A courtesy copy was sent to the Putative Intervenors and Defendants on that same date.

/s/ *Michelle W. Ghetti*

_____