IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| The STATE OF TEXAS, *et. al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | CIVIL ACTION NO. 3:22–cv–00780-X |
| vs. | § | |
| | § | |
| JOSEPH R. BIDEN, JR., | § | |
| in his official capacity as | § | |
| President of the United States, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

**PROPOSED INTERVENORS' REPLY IN SUPPORT OF
MOTION TO INTERVENE [ECF No. 19]**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

  A.  At Minimum, Proposed Intervenors Should Be Granted Permissive Intervention ...............1

  B.  Proposed Intervenors Are Entitled to Intervene as of Right .................................................3

    1.  Neither Presumption of Adequate Representation Applies..............................................3

    2.  Even if the Presumptions Apply, Proposed Intervenors Have Met Their "Relatively Minimal" Burden ..............................................................................................................6

  C.  Rosa and Jesus Properly Seek to Intervene in This Case......................................................9

CONCLUSION....................................................................................................................10

i

## TABLE OF AUTHORITIES

**Cases**

*Brumfield v. Dodd*,
    749 F.3d 339 (5th Cir. 2014)..................................................................................2, 5, 6

*Doe v. Glickman*,
    256 F.3d 371 (5th Cir. 2001).................................................................................3, 4, 5, 9

*E. Tex. Baptist Univ. v. Sebelius*,
    No. H-12-3009, 2013 WL 4678016 (S.D. Tex. Aug 30, 2013) .................................3

*Entergy Gulf States La., L.L.C. v. EPA*,
    817 F.3d 198 (5th Cir. 2016).....................................................................................4, 5, 7, 8

*Gratz v. Bollinger*,
    183 F.R.D. 209 (E.D. Mich. 1998)............................................................................3

*League of United Latin Am. Citizens v. Clements*,
    884 F.2d 185 (5th Cir. 1989).....................................................................................4

*Miller v. Vilsack*,
    No. 21-11271, 2022 WL 851782 (5th Cir. Mar. 22, 2022) .......................................4, 5

*Second Baptist Church v. City of San Antonio*,
    No. 5:20-CV-29-DAE, 2020 WL 6821324 (W.D. Tex. Apr. 17, 2020) .....................1

*Sierra Club v. Espy*,
    18 F.3d 1202 (5th Cir. 1994).....................................................................................1

*Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*,
    338 F.R.D. 364 (W.D. Tex. 2021)..............................................................................1

*Texas v. United States*,
    No. 6:21-cv-00003, 2021 WL 411441 (S.D. Tex. Feb. 6, 2021) ...........................1, 7, 8

*United States v. Tex. E. Transmission Corp.*,
    923 F.2d 410 (5th Cir. 1991).....................................................................................2

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
    834 F.3d 562 (5th Cir. 2016).....................................................................................7

**Rules**

Fed. R. Civ. P. 6............................................................................................................2

Fed. R. Civ. P. 24.....................................................................................................1, 3, 7, 8

Loc. Civ. R. 7.1.............................................................................................................2

**Statutes**

8 U.S.C. § 1158..................................................................................................................................5

8 U.S.C. § 1182..................................................................................................................................5

8 U.S.C. § 1254a................................................................................................................................5

Proposed Intervenors' motion to intervene should be granted. At minimum, Proposed Intervenors should be granted permissive intervention: it is undisputed that the Court has discretion to permit such intervention, this circuit's case law weighs in favor of it, the federal Defendants do not oppose it, and the Plaintiff States' opposition amounts to unsupported handwringing that Proposed Intervenors would impose an undue burden. Additionally, Proposed Intervenors have met their "minimal" or alternatively "relatively minimal" burden under this circuit's precedent to intervene as of right. The Parties' oppositions are directed to just one factor of the Rule 24(a) test—whether the federal Defendants may inadequately represent Proposed Intervenors' interests—and Proposed Intervenors have already outlined why such inadequacy exists here.  As the Fifth Circuit has made clear, intervention should be allowed "where no one would be hurt and greater justice could be attained."[1] *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (internal quotation marks omitted).

### A.  At Minimum, Proposed Intervenors Should Be Granted Permissive Intervention

The federal Defendants do not oppose permissive intervention, and the States do not dispute that this Court has discretion to permit intervention. The States' cases showing that courts have substantial discretion to deny permissive intervention, *see* Pls.' Opp'n at 19-20, ECF No. 36, are irrelevant to the question of whether the Court should exercise its discretion here.

The States' main argument against permissive intervention is that Proposed Intervenors would "inject[] factual, collateral, unnecessary issues, including credibility, into this case and will

---

[1] In similar circumstances, some courts grant both intervention by right and by permission, *see, e.g.*, *Second Baptist Church v. City of San Antonio*, No. 5:20-CV-29-DAE, 2020 WL 6821324, at *5-6 (W.D. Tex. Apr. 17, 2020); *Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 338 F.R.D. 364, 372-73 (W.D. Tex. 2021), and others grant permission to intervene and decline to reach intervention as of right, *see, e.g.*, *Texas v. United States*, No. 6:21-cv-00003, 2021 WL 411441, at *1 n.1 (S.D. Tex. Feb. 6, 2021).

require additional proceedings," based on their claim that the pending pseudonym motion will "undu[ly] burden" the existing parties, *see id.* at 21. But the federal Defendants consented to that motion, and the States declined to file a brief in opposition, and the time to do so has passed.[2] Proposed Intervenors moved to intervene when this case was still in its infancy, and courts in this circuit have held that permissive intervention does not impose an undue burden on the existing parties under analogous circumstances. *See* Mot. at 15 (collecting cases). Proposed Intervenors committed to adhere to any future briefing schedule and to act so as not to delay the progress of the litigation. *Id.* To the extent that Proposed Intervenors' intervention would "inject" additional facts and arguments into this case, this is precisely the point of intervention. *See Brumfield v. Dodd*, 749 F.3d 339, 344-45 (5th Cir. 2014) (the "purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions"). The States fail to identify any reason why Proposed Intervenors' intervention at this stage in the litigation would impose an *undue* burden on them.

The States' only other argument against permissive intervention is that Proposed Intervenors "cannot rebut the presumption of adequate representation." Pls.' Opp'n at 20. But the cases that the States cite demonstrate only that representation is one of several factors courts consider. *See, e.g.*, *United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 416 (5th Cir. 1991) (noting other reasons for denial). While Proposed Intervenors have rebutted either or both presumptions to the extent they apply, *see infra* Section B(1), permissive intervention is appropriate even where the intervenors are unable to meet the inadequacy of representation

---

[2] *See* Loc. Civ. R. 7.1(d), (e) ("A response to an opposed motion must be accompanied by a brief that sets forth the responding party's contentions of fact and/or law, and argument and authorities," and such response "must be filed within 21 days from the date the motion is filed"); Fed. R. Civ. P. 6(b)(1)(B) (time may be extended after deadline only "if the party failed to act because of excusable neglect").

requirement, *see* Mot. 16-17 (collecting cases); *E. Tex. Baptist Univ. v. Sebelius*, No. H-12-3009, 2013 WL 4678016, at *6 (S.D. Tex. Aug 30, 2013) (permitting intervention although intervenors' interests were "very similar" to those of existing parties because they "will add a different perspective that will contribute to the development of the issues").

Here, the permissive intervention factors weigh in favor of permitting intervention. Mot. at 15-17. Indeed, the States do not dispute that Proposed Intervenors bring different perspectives and facts to this case, and, as they note, Proposed Intervenors' counsel from the International Refugee Assistance Project are counsel in *S.A. v. Trump*, *see* Pls.' Opp'n at 9 n.6, and have relevant experience and knowledge that bear on this case. Under Fifth Circuit law, the fact that Proposed Intervenors are likely to provide significant contributions to the development of the underlying factual issues is also a factor weighing in favor of permitting intervention. *See* Mot. at 16.

### B. Proposed Intervenors Are Entitled to Intervene as of Right

All of the Parties' arguments against intervention as of right are directed at the fourth and final Rule 24(a) factor, and thus the only question to resolve is whether Proposed Intervenors *may* be inadequately represented by the federal Defendants.[3] Proposed Intervenors have met their "minimal" or "relatively minimal" burden, and they are entitled to intervene by right.

#### 1. Neither Presumption of Adequate Representation Applies

As previously noted, under certain circumstances, Fifth Circuit precedent imposes two

---

[3] While the States assert that Proposed Intervenors' motion is untimely because it is premature, *see* Pls.' Opp'n at 11-13, prematurity is more appropriately analyzed as part of inadequacy of representation—as the States' own cited case reflects, *see Gratz v. Bollinger*, 183 F.R.D. 209, 212 n.3 (E.D. Mich. 1998) (holding that intervention was timely and construing argument about prematurity of motion to go to inadequacy), *rev'd on other grounds*, 188 F.3d 394 (6th Cir. 1999); *see also Doe v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001) (courts must consider *Stallworth* factors in assessing the timeliness of a request to intervene, none of which relate to prematurity). The motion is timely under Fifth Circuit precedent. *See* Mot. at 8-9.

presumptions of adequate representation that can be rebutted on a "relatively minimal" showing that representation by the existing parties "may" be inadequate based on "something more than speculation." Mot. at 11 (internal citations omitted). If the presumptions do not apply, a "minimal" showing is required. *Id.* The Parties argue both presumptions apply, but they are incorrect.

***First***, the government legal representative presumption does not apply, and the Parties' arguments to the contrary find no basis in this circuit's precedent. The presumption arises when a party to the case "is a governmental body or officer *charged by law* with representing the interests of the intervenor," *see id.* (internal citations omitted) (emphasis added), and it is "*restricted . . . to those suits involving matters of sovereign interest*," such as where a state is presumed to represent the interests of all its citizens, *see Entergy Gulf States La., L.L.C. v. EPA*, 817 F.3d 198, 203 & n.2 (5th Cir. 2016) (internal quotation marks omitted). The federal Defendants assume that the presumption applies because they purport to represent "the interests of all applicants and beneficiaries in this administrative challenge to CAM." Defs.' Opp'n at 2, ECF No. 37. The States argue, without supporting caselaw, that the presumption applies because "in no area is the 'sovereign interest' presumption more relevant than in an immigration case," and "[t]his, alone, should result in a denial of the Purported Intervenors' intervention."[4] Pls.' Opp'n at 19.

The Parties' arguments ignore that the Fifth Circuit has repeatedly held that the presumption does not apply in cases involving governmental agencies because the agencies "must represent the broad public interest" and cannot be presumed to represent the particular legal interests of proposed intervenors. *Glickman*, 256 F.3d at 380-81; *see, e.g.*, *Entergy*, 817 F.3d at 203-04 n.2; *Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at *2-3 & n.4 (5th Cir. Mar. 22,

---

[4] As an initial matter, the States misstate the legal standard: the presumption is *rebuttable* based on a "'relatively minimal'" showing based on "'something more than speculation.'" *See* Mot. at 11 (quoting *League of United Latin Am. Citizens v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989)).

2022). Just as in *Glickman*, *Entergy*, and *Miller*, the federal Defendants cannot be presumed to represent the legal interests of the Proposed Intervenors. In recent years, they have taken actions directly adverse to Proposed Intervenors' interests, such as shutting down the CAM Program for the children of Rosa, Jesus, and Timoteo, and thus prolonging their separation from their families and the dangers their families face. *See* Mot. at 2-3, 5-6. Even today, the federal Defendants have authority to take actions that would eliminate Proposed Intervenors' permission to be in this country and to be united with their families in safety here. *See* 8 U.S.C. § 1158(b)(1)(A) (asylum "may" be granted in federal government's discretion); *id.* § 1182(d)(5)(A) (same for parole for urgent humanitarian reasons or significant public benefit); *id.* § 1254a(b)(3) (requiring government to review Temporary Protected Status designations to determine whether to extend them).

*Second*, the ultimate objective presumption does not apply in this case. The States assume that the presumption applies because, they assert, that Proposed Intervenors and the federal Defendants "share in the same ultimate objective" to defend CAM, Pls.' Opp'n at 16. But, the Fifth Circuit has squarely rejected this gloss: the *Brumfield* court held the presumption "d[id] not apply" even where "both" the state and intervenors "vigorously oppose[d] dismantling the voucher program" at issue. 749 F.3d at 345. The court reasoned that the state had "many interests" at stake, whereas the intervenors were solely concerned with their ability to benefit from the program; as such, the intervenors and the state's ultimate interests "may not align precisely." *Id.* at 345-46.

While the federal Defendants assert that Proposed Intervenors have not sufficiently shown the government has more extensive interests, Defs.' Opp'n 2-3 & nn.1-2, they ignore the arguments in Proposed Intervenors' motion, *see* Mot. 12-14; and they misread *Brumfield* when they suggest that more than these interests is necessary to determine whether the presumption applies. Here, as in *Brumfield*, the federal Defendants have broad institutional interests, which

5

include preserving an expansive interpretation of executive authority that enables the federal government to reopen and expand the CAM Program as well as to close the Program and stop processing pending applications, in response to political and policy priorities that change over time.[5] *See* Mot. at 12-14. Proposed Intervenors do not share this interest; their ultimate objective is to reunite and remain united with their families in safety in the United States, and the CAM Program is one potential means by which they might achieve their objective. *See id*. at 12. That the ultimate objectives differ is highlighted by the fact that while re-opening CAM, the federal Defendants have continued to close the southern border as another means by which families seeking refuge from violence in Central America could seek to reunite in safety in the United States. *See* Defs.' Opp'n at 4-5 (citing Press Release, Office of the Spokesperson, U.S. Department of State, *Restarting the Central American Minors Program* (Mar. 10, 2021)). Even the federal Defendants' articulation of their ultimate objective differs from that of Proposed Intervenors in ways that may affect their advocacy: they argue that they seek to defend the 2021 "reimplementation and expansion of CAM," *id.* at 2, while Proposed Intervenors seek to defend the CAM Program in *all* its iterations that may enable them to reunite and remain with their families, including continued CAM parole processing under the 2019 *S.A.* settlement and CAM re-parole. Because the federal Defendants and Proposed Intervenors' ultimate interests "may not align precisely," the ultimate interest presumption does not apply. *Brumfield*, 749 F.3d at 345-46.

### 2. Even if the Presumptions Apply, Proposed Intervenors Have Met Their "Relatively Minimal" Burden

Even if one or both of the presumptions of adequate representation apply (they do not),

---

[5] The federal Defendants' argument that their prior termination of CAM is outside the scope of "*this* litigation," *see* Defs.' Opp'n at 5, misses the point: the federal Defendants' prior actions and arguments are likely to constrain the arguments they make in this case, because to do otherwise would call into question the legality of their actions and tie the government's hands in the future.

6

Proposed Intervenors have met their "relatively minimal" burden to demonstrate, based on more than speculation, that their interests diverge from the federal Defendants' interests in a manner germane to the case. *See* Mot. at 11-14. All the States' arguments amount to an effort to graft a new requirement on to the Rule 24(a) standard that proposed intervenors must wait until after the responsive pleading is filed before moving to intervene on the theory that to do so earlier would be "premature" as a matter of law. *See* Pls.' Opp'n at 18-19 (arguing Proposed Intervenors' arguments are "without any basis" because "Defendants have filed no pleadings" and "[a]ny speculation as to future contingencies, given that no pleadings have been filed, is not sufficient"). But the States' own caselaw demonstrates that their position is incorrect. *See Entergy*, 817 F.3d at 201-02, 206 (reversing denial of motion to intervene as of right where motion was filed less than a month after the complaint filing and before the defendants had filed any responsive pleading).

The States attempt to distinguish several cases in which the Fifth Circuit has reversed a district court's denial of intervention as of right, *see* Pls.' Opp'n at 17-18, but they fail to recognize that appellate courts in those cases were able to pinpoint the reasons that representation *proved to be* inadequate given the time that had passed between the district court decision and appeal—notwithstanding that the intervention standard requires only that representation *may* be inadequate. *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016) ("Because intervention necessarily occurs before the litigation has been resolved, the [intervenor] need only show that the representation *may* be inadequate." (internal quotation marks omitted)). For example, the Parties argue that *Texas* is distinguishable because the federal government took a position "directly adverse" to the proposed beneficiaries: that the States may refuse driver's licenses to DAPA beneficiaries. *See* Pls.' Opp'n 17-18; Defs.' Opp'n 3-4. But the government first took this position *after* the intervention motion was filed, and it was not until the briefing on appeal

7

that the parties' divergent objectives were fleshed out. *See* Appellants' Reply Br. at 12, *Texas v. United States*, 805 F.3d 653 (5th Cir. 2015) (No. 15-40333), 2015 WL 4040957, at *11-12 (describing how government's opening brief on appeal showed government had abandoned its defense of part of the DAPA program, while proposed intervenors sought to defend all of DAPA); *see also Entergy*, 817 F.3d at 204-05 (describing developments that took place after intervention motion filed in reversing district court's denial of intervention of right). Rule 24(a) does not expect or require perfect foresight as to how inadequate representation will manifest throughout the case.

Here, as in *Texas* and *Entergy*, Proposed Intervenors have satisfied their burden based on the "lack of unity in all objectives, combined with real and legitimate additional or contrary arguments[.]" *Texas*, 805 F.3d at 663 (internal quotation marks omitted). They describe how their narrow interests in reuniting with their families diverge from the broader, institutional interests of the federal Defendants, including in maintaining "an expansive interpretation of executive authority" that would allow for CAM to be both reopened and closed. *See* Mot. at 12-14. And they explain why these divergent interests are germane to this case: specifically, Proposed Intervenors are prepared to argue that terminating or dismantling CAM will result in irreparable harm to beneficiaries—with important implications for the appropriate remedy in this case—and they have access to concrete evidence of such irreparable harm, *see* Mot. at 5-7, 13-14, which is most appropriately submitted on the record by a party. The federal Defendants, in contrast, are unlikely to make such arguments that would tie the federal government's hands in the future and call into question the legality of prior government actions.

In addition, the federal Defendants lack access to specific concrete evidence of irreparable harms that CAM beneficiaries have suffered and will suffer if the program is terminated, and their attempt to argue otherwise is unpersuasive. They rely on two public statements about the CAM

reopening to argue that the "Government is aware of the humanitarian and personal value of CAM and the harm its loss would cost[] to beneficiaries," Defs.' Opp'n at 4, but the statements are silent about the fact that CAM was shut down in the recent past by their own actions, let alone the harms beneficiaries suffered as a result and continue to suffer. Similar to the States, the federal Defendants conflate the Administration's current policy interest in reopening CAM with the absence of any competing interests that may impact their advocacy in this case. Pls.' Opp'n at 15-18; Defs.' Opp'n at 4-5. But the cited statements speak to the federal Defendants' broad institutional and political interests that Proposed Intervenors do not share and that may result in inadequate representation. *See, e.g.*, Office of the Spokesperson, U.S. Dep't of State, *Restarting the Central American Minors Program* (describing CAM reopening as "another concrete step in implementing our comprehensive regional migration management strategy," which includes closing southern border to migrants fleeing violence in Central America).

Finally, the federal Defendants' argument that the prior CAM shutdown is not germane to the case, Defs.' Opp'n at 5, misunderstands Proposed Intervenors' argument. Proposed Intervenors have explained why the federal Defendants' prior shutdown of CAM and arguments in recent litigation may limit the arguments they are willing to make in this case, such that their representation may be inadequate *in this case*. These arguments are grounded in fact and are more than speculation—and satisfy their "relatively minimal" burden. *See, e.g.*, *Glickman*, 256 F.3d at 380-81 (holding inadequacy prong met based in part on fact that agency took position in another federal case "contrary to the [proposed intervenor]'s contention and the position it now takes").

### C. Rosa and Jesus Properly Seek to Intervene in This Case

Last, the States imply that certain Proposed Intervenors should not be granted intervention in this case because they are among the *S.A.* settlement beneficiaries and Rosa is already in the

United States. *See* Pls.' Opp'n at 5-6. This is a red herring: the States do not dispute that Rosa and Jesus have the requisite protectable interest in *this* case or that their ability to protect their interest may be impaired absent intervention. *See* Mot. at 9-11. Nor could they; the plain language of the States' Amended Complaint threatens all iterations of parole under CAM, including those aspects of CAM that Rosa and Jesus seek to rely upon to reunite with their families and to remain together in safety in the United States. Am. Compl. at 35-36, ECF No. 14 (Prayer for Relief) (requesting this Court to "[e]njoin . . . Defendants' use of the parole authority under the Central American Minors Program" and to "set [the CAM Program] aside to the extent that it provides *any* benefits outside of the contours of the Refugee Admissions Program" (emphasis added)).

On April 20, 2022, Proposed Intervenors met and conferred with the States to clarify whether they plan to narrow the scope of their legal challenge given the substantial disconnect between their Prayer for Relief and their representations in their opposition brief that they do not seek to terminate the CAM Program for Rosa and Jesus. *See infra*, Certificate of Conference. The States indicated that their Amended Complaint speaks for itself, and they have no current plans to amend it. *Id.* Therefore, Proposed Intervenors have no choice but to rely upon the plain language of the Amended Complaint, which broadly extends its reach to Rosa and Jesus.

## CONCLUSION

In light of the foregoing, Proposed Intervenors respectfully request that this Court grant their motion to intervene in this case using their pseudonyms.[6]

---

[6] Proposed Intervenors respectfully request that the Court adjudicate their pending motion to proceed under pseudonyms based on the papers before it, given the States' failure to oppose in a timely manner, *see supra* 3 & n.2, and they note that the federal Defendants have consented to Proposed Intervenors' use of pseudonyms.

Dated:   April 22, 2022                              Respectfully submitted,

/s/ Debra J. McComas                                 /s/ Linda B. Evarts
Debra J. McComas                                     Linda B. Evarts
HAYNES & BOONE LLP                                   NYS Bar #5236948 (*pro hac vice*)
State Bar No. 00794261                               Kathryn C. Meyer
2323 Victory Ave., Suite 700                         NYS Bar #5504485 (*pro hac vice*)
Dallas, Texas 75219                                  Mariko Hirose
Tel. (214) 651-5000                                  NYS Bar #4802674 (*pro hac vice*)
Fax (214) 651-5940                                   INTERNATIONAL REFUGEE
*debbie.mccomas@haynesboone.com*                     ASSISTANCE PROJECT
                                                     One Battery Park Plaza, 4th Floor
                                                     New York, NY 10004
                                                     Tel. (516) 838-1655
                                                     Fax: (929) 999-8115
                                                     *levarts@refugeerights.org*
                                                     *kmeyer@refugeerights.org*
                                                     *mhirose@refugeerights.org*

*Counsel for Proposed Defendant-Intervenors*

**CERTIFICATE OF CONFERENCE**

On April 12, 2022, Proposed Intervenors' counsel requested to meet and confer with Plaintiffs' counsel to clarify whether Plaintiffs intend to narrow the scope of their legal challenge in light of the substantial disconnect between the broad relief requested in their Amended Complaint's Prayer for Relief and their representations in their opposition brief that Plaintiffs request more narrow relief. On April 20, 2022, Proposed Intervenors' counsel conferred telephonically with counsel for Plaintiffs. The identities of the attorneys conferring were as follows: Ryan D. Walters, Michelle W. Ghetti, and Gene P. Hamilton for the Plaintiffs, and Linda B. Evarts, Kathryn C. Meyer, Mariko Hirose, and Debra J. McComas for the Proposed Intervenors.

Plaintiffs' counsel informed Proposed Intervenors' counsel that their Amended Complaint "speaks for itself" and they were "not in a position to elaborate" further. Plaintiffs' counsel represented that Plaintiffs have no current plans to amend their complaint. Proposed Intervenors responded that there are "extreme inconsistencies" between the Prayer for Relief and the representations in Plaintiffs' opposition, explained why the two documents are inconsistent, and said that Proposed Intervenors would have to bring the inconsistencies to the Court's attention in their reply. Plaintiffs' counsel stated that the reply was the "proper vehicle" for Proposed Intervenors to address their concerns.

                                                     /s/ *Linda B. Evarts*
                                                     Linda B. Evarts

**CERTIFICATE OF SERVICE**

The undersigned certifies that on April 22, 2022, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the CM/ECF system. I hereby certify that I have served the document on all counsel by a manner authorized by Federal Rule of Civil Procedure 5(b)(2) via the Court's CM/ECF filing system.

/s/ *Linda B. Evarts*
Linda B. Evarts