IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| The STATE OF TEXAS, *et. al.*, | § § § | |
| *Plaintiffs*, | § § | CIVIL ACTION NO. 3:22–cv–00780-m |
| vs. | § § | |
| JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*, | § § § § § | |
| *Defendants*, | § § | |
| and | § § | |
| TIMOTEO, and UZIAS, | § § § | |
| *Intervenor-Defendants*. | § | |

**<u>MOTION TO INTERVENE UNDER FED. R. CIV. P. 24
AND BRIEF IN SUPPORT</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................. ii

INTRODUCTION ............................................................................................................................... 1

BACKGROUND ................................................................................................................................. 1

    A.    Relevant Background on the CAM Program ............................................................ 1

    B.    Plaintiff States' Challenge to the Biden Administration's Reopening of CAM ........................................................................................................................ 5

    C.    Proposed 2023 Intervenors are the Intended Beneficiaries of the CAM Enhancements ............................................................................................................ 6

ARGUMENT ...................................................................................................................................... 8

CONCLUSION ................................................................................................................................ 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*League of United Latin Am. Citizens, Council No. 4434 v. Clements*,
   884 F.2d 185 (5th Cir. 1989) ..................................................................................9

*S.A. v. Trump*,
   363 F. Supp. 3d 1048 (N.D. Cal. 2018) ...................................................................3

*S.A. v. Trump*,
   No. 18-cv-03539-LB, 2019 WL 990680 (N.D. Cal. Mar. 1, 2019) .......................3, 4

*Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*,
   338 F.R.D. 364 (W.D. Tex. 2021) ...........................................................................9

*Texas v. U.S. Dep't of Homeland Sec.*,
   No. 6:23-CV-00007, 2023 WL 3025080 (S.D. Tex. Apr. 19, 2023) ..........10, 11, 12

*Texas v. United States*,
   805 F.3d 653 (5th Cir. 2015) ...............................................................................8, 12

**Other Authorities**

Fed. R. Civ. P. 24 ..........................................................................................................9

## INTRODUCTION

Proposed Intervenors Antonio, Magdalena, Marta, and Elizabeth[1] ("Proposed 2023 Intervenors") move to intervene as defendants in this action seeking to thwart the reopening of the Central American Minors ("CAM") Program. This Court previously granted intervention to two parents, Defendant-Intervenors Timoteo and Uzias, who sought to reunify with their children under earlier phases of CAM's reopening. Order 3, ECF 41. In its Order, the Court recognized Defendant-Intervenors' interest in this case and acknowledged that their experience of applying for CAM parole for their children would bring "a perspective that will contribute to full development of the underlying factual issues." *Id.* Timoteo has since been reunited with his daughter in the United States through CAM. Joint Status Report Regarding Jurisdictional Discovery 2, ECF 96. And in April 2023, the Biden Administration again expanded eligibility for CAM's reopening, giving Proposed 2023 Intervenors an opportunity to be considered for CAM parole. *See* Meyer Decl., Ex. BB, App'x at 503 ("CAM Enhancements"). Plaintiff States have just informed the Court that they intend to proceed with this action and incorporate the enhancements into their existing challenge, *see* Unopposed Mot. for Leave for Pls. to File a Suppl. Cmpl., ECF 108, and Proposed 2023 Intervenors now seek to defend their humanitarian interest in reuniting with their children through the CAM program.

## BACKGROUND

### A. Relevant Background on the CAM Program[2]

The Obama Administration created the CAM Program in 2014 in response to unprecedented numbers of unaccompanied minors fleeing danger in Central America and

---

[1] Proposed 2023 Intervenors concurrently file a motion to proceed under pseudonym.
[2] In light of the Court's familiarity with the CAM Program, Proposed 2023 Intervenors focus their discussion on facts relevant to how Proposed Intervenors who are newly eligible for CAM are differently situated than the current Defendant-Intervenors.

MOTION TO INTERVENE UNDER FED. R. CIV. P. 24                                              Page 1
AND BRIEF IN SUPPORT

arriving at the southern border. *See* Meyer Decl., Ex. A, App'x at 70. CAM provided lawfully present parents, who were established in the United States but lacking a pathway to reunite with family, with an avenue to bring their children safely and legally by plane. *See* Meyer Decl., Ex. B, App'x at 117. Eligible statuses for CAM parents at that time included Temporary Protected Status ("TPS"), a legal status that has been available to certain Salvadorans and Hondurans in the United States who entered prior to 2001 and 1999, respectively, and who did not otherwise have a legal means for sponsoring their children to join them in the United States. Meyer Decl., Ex. A, App'x at 86 & n.127, 102; *Id.*, Ex. Y, App'x at 458; *Id.*, Ex. Z, App'x at 472. When CAM began, asylum seekers and individuals who were eligible to apply for visas after being victims of crime (U Visa petitioners) or trafficking (T Visa applicants) were not eligible. *Cf. id.*, Ex. A, App'x at 102 (omitting these statuses from the list of qualifying statuses).

CAM was created as a dual track refugee and parole program. *Id.*, Ex. A., App'x at 102-03. First, CAM applicants are considered for refugee resettlement, which affords a path to permanent legal status in the United States. *Id.*, App'x at 96, 106. If applicants are not approved as refugees, they are considered for temporary parole in the United States on a case-by-case basis. *Id.* at 106. CAM processing begins with multiple screening and vetting steps, including DNA testing to confirm the biological relationship with the U.S.-based parent, security checks, an in-person interview, and ultimately a USCIS decision conditionally granted refugee resettlement or parole. *Id.*, App'x 104-06. If an applicant is approved to proceed on either the refugee or the parole track, they must then complete a medical exam, undergo additional security vetting, and arrange for their flights to the United States.[3] *Id.*, App'x at 106-07. This process can

---

[3] Parolees must pay for their own medical exams and flights to the United States. Meyer Decl., Ex. A, App'x at 105.

**MOTION TO INTERVENE UNDER FED. R. CIV. P. 24**            Page 2
**AND BRIEF IN SUPPORT**

be lengthy and take several years. *Id.*, App'x at 85; *see also Id.*, Ex. AA, App'x at 495 (discussing backlogs and delays in CAM processing).

When the Trump Administration shut down the CAM program soon after President Trump took office, it did so in stages. First, the Trump Administration shut down CAM's parole track, including for applicants who had been in processing for years, were conditionally approved for parole, and were on the verge of travel. *See* Mot. to Intervene 2-3, ECF 19 (noting DHS stopped processing CAM parole cases in early 2017 and publicly terminated CAM parole six months later). But the refugee track remained open. Meyer Decl., Ex. D., App'x at 131. During this time, pending CAM cases in the pipeline that had been filed under the Obama Administration were *only* considered for refugee status—not for CAM parole, *id.*, as they had understood they would be considered for when they applied. As a result, if a pending application was found to be ineligible for refugee resettlement, the family received a CAM denial outright without being evaluated for parole. Proposed Intervenors Antonio and Magdalena are in this group of CAM petitioners. *See* Antonio Decl. ¶¶ 27-29, 39, App'x at 15-16; Magdalena Decl. ¶¶ 19-22, App'x at 27.

Later, the Trump Administration shut down CAM's refugee track, also in stages. In January 2018, it shut down the refugee track for pending applicants who had applied under the Obama Administration and had been in processing for years but who had not yet been interviewed. Meyer Decl., Ex. C, App'x at 125. Current Defendant-Intervenor Timoteo is in this group of CAM applicants. Mot. to Intervene 6, ECF 19.

Meanwhile, a non-profit organization and six families sued to reopen the CAM parole program. *S.A. v. Trump*, 363 F. Supp. 3d 1048, 1055 (N.D. Cal. 2018) ("S.A. I"); *see also S.A. v. Trump*, No. 18-cv-03539-LB, 2019 WL 990680, at *2 (N.D. Cal. Mar. 1, 2019) ("S.A. II"); Mot.

to Intervene 3-4, ECF 19.[4] Through a preliminary injunction and subsequent settlement agreement in this litigation, the government agreed to reopen and finish processing over 2,700 CAM cases that had been in the final stages of parole processing when the program was terminated—specifically, applicants who had already been "conditionally approved for parole." *See S.A. II*, 2019 WL 990680 at *13, 17; Meyer Decl., Ex. F, App'x at 137-40. But the government was not required to reopen pending cases, such as Antonio's and Magdalenda's families' applications, that had been denied refugee resettlement but never considered for parole because parole processing was closed. Antonio Decl. ¶¶ 24-29, App'x at 15; Magdalena Decl. ¶¶ 19-22, App'x at 26.

When the Biden Administration reopened CAM beginning in 2021, it reopened the program in stages. First, in "Phase One," it moved to reopen the program for applicants such as Defendant-Intervenor Timoteo, who filed CAM applications under the Obama Administration but had not yet been interviewed and never received a decision. Meyer Decl., Ex. J, App'x at 177. Then, in "Phase Two," it reopened CAM to *new* applicants and expanded eligibility to certain lawfully present parents in the United States who did not otherwise have a legal pathway to reunite with their children, namely parents with pending asylum and U Visa petitions whose underlying asylum applications and U Visa petitions were submitted before May 15, 2021. *Id.*, Ex. K, App'x at 179. Current Defendant-Intervenor Uzias is in this group of newly eligible CAM parents. Mot. to Intervene 6-7, ECF 19.

Two years later, in April 2023, the Biden Administration again expanded CAM eligibility and made additional changes to CAM processing through the CAM Enhancements. Meyer Decl.,

---

[4] As the Court is aware, Proposed 2023 Intervenors' counsel, the International Refugee Assistance Project, was counsel for the Plaintiffs in *S.A. v. Trump*. *See* Mot. to Intervene 3 n.3, ECF 19.

**MOTION TO INTERVENE UNDER FED. R. CIV. P. 24**  Page 4
**AND BRIEF IN SUPPORT**

Ex. BB, App'x at 503, 509-10. Of relevance here is that the Enhancements gave parents like Antonio and Magdalena, who applied under the Obama Administration and had undergone an interview, the opportunity to have their children's applications considered for humanitarian parole for the first time. *See id.*; Antonio Decl. ¶ 39, App'x at 16; Magdalena Decl. ¶ 22, App'x at 27. It also expanded CAM eligibility: T Visa applicants were permitted to file CAM applications for the first time, and more asylum seekers and U Visa petitioners became eligible—specifically individuals whose asylum applications and U Visa petitions were filed between May 15, 2021 and April 11, 2023. Meyer Decl., Ex. BB, App'x at 510. Proposed 2023 Intervenors Marta and Elizabeth are in this group of CAM applicants. *See* Marta Decl. ¶ 34, App'x at 40; Elizabeth Decl. ¶ 31, App'x at 51.

### B. Plaintiff States' Challenge to the Biden Administration's Reopening of CAM

On January 28, 2022, Plaintiff States challenged the Biden Administration's reopening of CAM. Compl., ECF 1; *see also* Am. Compl., ECF 14. The Court thereafter permitted Timoteo and Uzias, two parents with pending CAM applications for their children under the 2021 Biden reopening, to intervene. Order, ECF 41 at 3. One of the Defendant-Intervenors, Timoteo, was reunited with his daughter in the United States, Joint Status Report Regarding Jurisdictional Discovery 2, ECF 96; she remains eligible for CAM re-parole but is no longer awaiting CAM in-country processing in El Salvador.

The parties are currently engaging in a reciprocal jurisdictional discovery process and are scheduled to serve responses and objections on September 15, 2023. Order on Schedule for Further Proceedings, ECF 107. The case remains in its infancy, Order, ECF 102, with no answer or dispositive motions filed to date, and motion to dismiss briefing set for October and November, *See* Order, ECF 107. On August 23, 2023, Plaintiffs filed a motion for leave to file a supplemental complaint, in which they incorporated the April 2023 CAM Enhancements into

their challenge. Unopposed Mot. for Leave to File a Suppl. Compl., ECF 108; Suppl. Compl, ECF 108-1.

### C. Proposed 2023 Intervenors are the Intended Beneficiaries of the CAM Enhancements

Proposed 2023 Intervenors Antonio, Magdalena, Marta, and Elizabeth move to intervene to defend the CAM program and their opportunity to reunite safely with their relatives under the CAM Enhancements.

Proposed Intervenor Antonio has lived in Massachusetts for about 22 years. Antonio Decl. ¶ 3, App'x at 13. He has Temporary Protected Status and has other relatives with status in the United States, including a son in Boston who has Lawful Permanent Resident status. *Id.* ¶¶ 4-6, App'x at 13.  During the Obama Administration, Antonio applied to CAM on behalf of his youngest son and wife who live in El Salvador. *Id.* ¶ 22, App'x at 14. In 2017, after his wife and son had been interviewed, they were denied refugee resettlement under CAM. *Id.* ¶¶ 26-27, App'x at 15. Their case was then closed without being considered for CAM parole because the Trump Administration had already shut down parole processing. *Id.* ¶¶ 28-29, App'x at 15. The situation in El Salvador has remained very dangerous for Antonio's wife and son. *Id.* ¶¶ 30-38, App'x at 15-16. One day, men broke into Antonio's mother-in-law's home and beat her until she nearly died, and the family fears that gangs will forcibly recruit or attack Antonio's son. *Id.* ¶¶ 32-36, App'x at 15. Antonio's family's CAM case is newly eligible to be considered for CAM parole under the CAM Enhancements. *Id.* ¶ 39, App'x at 16.

Proposed Intervenor Magdalena has lived in Virginia for 22 years and has Temporary Protected Status. Magdalena Decl. ¶¶ 3-4, App'x at 20, 26. In 2015, Magdalena applied to CAM on behalf of her two youngest daughters in El Salvador. *Id.* ¶¶ 8, 19, App'x at 26-27. Her daughters were subsequently interviewed, but their case was then closed without being

considered for CAM parole because the Trump Administration had already shut down parole processing. *Id.* ¶¶ 20-21, App'x at 27. Magdalena continues to fear for her family's safety and is eager to safely reunite with her daughters in the United States. *Id.* ¶¶ 25, 38, App'x at 27, 29. Her family lives in an area of El Salvador with strong gang presence, and one of her daughters was stabbed in an attempted robbery. *Id.* ¶¶ 26, 28, App'x at 27-28. In 2022, the police arrested three of her daughters as part of the Salvadoran government's "state of exception," which has involved the mass detention of tens of thousands of citizens and suspension of civil rights and liberties; two have since been released and one remains imprisoned. *Id.* ¶¶ 31-33, App'x at 28; *see also* Meyer Decl., Ex. CC, App'x at 514-15. Magdalena's daughters' CAM cases are newly eligible to be considered for CAM parole under the CAM Enhancements. Magdalena Decl. ¶ 22, App'x at 27.

Proposed Intervenor Marta has lived in North Carolina for about two years. Marta Decl. ¶ 3, App'x at 38. She has a pending asylum application and lives with her son who came with her to the United States. *Id.* ¶¶ 4-6,, App'x at 38. Marta fled Honduras with her youngest son after her brother, who is in a gang, repeatedly threatened to kill her. *Id.* ¶¶ 16-18, App'x at 38-39. She has three other children whom she could not bring with her and who stayed behind with her mother in Honduras, who has since passed away. *Id.* ¶¶ 19-20, 25, App'x at 39. The situation in Honduras has remained very dangerous for Marta's children. *Id.* ¶¶ 21-27, App'x at 39. Her brother has threatened to harm her children, and they have had to change where they live frequently out of fear for their safety. *Id.* ¶¶ 23, 27, App'x at 39. Marta is newly eligible to apply to reunite with her children under the CAM Enhancements because she has a pending asylum application filed after May 15, 2021 and before April 11, 2023. *Id.* ¶ 34, App'x at 40.

Proposed Intervenor Elizabeth has lived in New York for about a year and a half. Elizabeth Decl. ¶ 4, App'x at 49. She has a pending asylum application and lives with her partner and young son. *Id.* ¶¶ 5-6, App'x at 49. Elizabeth fled Guatemala with her partner and then-newborn after facing abuse from the father of her two older children. *Id.* ¶¶ 15, 21, App'x at 49-50. She was not able to bring her two older children to the United States with her, and they stayed behind in the care of her mother. *Id.* ¶¶ 21-22, App'x at 50. The situation in Guatemala has remained very dangerous for Elizabeth's children, and she fears that their father will attack her family or take her children away. *Id.* ¶¶ 23-24, App'x at 50. Elizabeth is newly eligible to apply to reunite with her children under the CAM Enhancements because she has a pending asylum application filed after May 15, 2021 and before April 11, 2023. *Id.* ¶¶ 30-32, App'x at 50-51.

## ARGUMENT

Proposed 2023 Intervenors request that the Court grant them permission to intervene for the same reasons it permitted Defendant-Intervenors Timoteo and Uzias to participate in this case: namely, to defend their personal interest in the continued availability of the CAM Program as a means for families to reunite in safety and to provide the Court with important perspectives and information about the Program that may otherwise be lacking. *See* Order 3, ECF 41. Rule 24 is to be "liberally construed" and intervention should be permitted "where no one would be hurt and greater justice could be attained." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) ("Texas I") (quoting *Sierra Club v. Epsy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

The Court previously granted permissive intervention to Defendant-Intervenors Timoteo and Uzias upon its finding that their motion was timely, they had an interest in this case, and their personal experience would contribute to the Court's understanding of the factual issues at

play. *See* Order 3, ECF 41. So too is permissive intervention appropriate here to enable newly eligible applicants to defend the CAM program. Proposed 2023 Intervenors Antonio, Magdalena, Marta, and Elizabeth satisfy the legal requirements for permissive intervention and would add an important perspective. Given that they have just become eligible for CAM under the Enhancements, their cases have not yet begun processing, and they will have an ongoing interest in the CAM program's availability for children in danger in Central America. Current Defendant-Intervenors' interest is or is likely to become more limited, given that their relatives are well along in processing or have already arrived in the United States.

A court may, in its discretion, grant permissive intervention where: (1) the motion is timely, (2) the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact," and (3) where the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1), (3). In addition, courts "may consider, *inter alia,* the effect of permitting intervention on the existing parties, whether the intervenors' interests are adequately represented by other parties and whether the intervenors will significantly contribute to full development of the underlying factual issues in the suit." Order, ECF 41 at 2 (citing *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472 (5th Cir. 1984)); *see also League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989).

Proposed 2023 Intervenors' motion is timely and will not unduly delay or prejudice the existing parties. *See* Fed. R. Civ. P. 24(b)(1), (3); *Cf. Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 338 F.R.D. 364, 372-73 (W.D. Tex. 2021) ("The analysis as to whether the intervention will cause undue delay or prejudice is essentially the same as the timeliness analysis."). This case remains in the early stages and no dispositive motions have yet been filed.

Order, ECF 102 (ordering Plaintiffs to inform the Court of the likelihood of pursuing the instant action given that the case has been pending for a year and a half "and yet remains in the very preliminary stages"); *see also* Order 3, ECF 41 (permitting Defendant-Intervenors to intervene where "the case [was] in its infancy, the Court has not yet entered a scheduling order, and no dispositive motions have been filed") The Court stayed and held in abeyance the deadline for responses to the Amended Complaint while the parties engage in jurisdictional discovery, with responses and objections set to be exchanged on September 15, 2023. Order, ECF 50; Order, ECF 107; *see also Texas v. U.S. Dep't of Homeland Sec.*, No. 6:23-CV-00007, 2023 WL 3025080, at *3 (S.D. Tex. Apr. 19, 2023) ("Texas II") (Parole applicants who intervened while discovery was ongoing did not prejudice existing parties because "obtaining a more fulsome record . . . is in the interest of justice and poses no harm."). Proposed 2023 Intervenors now move to intervene within days of Plaintiffs filing their supplemental complaint incorporating the Enhancements into their challenge. *See* Unopposed Mot. for Leave to File a Suppl. Compl., ECF 108. Proposed 2023 Intervenors, who are represented by Defendant-Intervenors' counsel, are prepared to diligently participate in the litigation and will not disrupt the existing schedule for further proceedings.

Just as with the current Defendant-Intervenors, Proposed 2023 Intervenors' defense of CAM and their ability to reunite with their children under the Enhancements shares common questions of law and fact with the existing challenge to CAM's reopening. *See id.* at 3 (noting Plaintiffs' Supplemental Complaint "addresses nearly identical legal and factual issues as the reinstituted CAM Program"). These questions include Plaintiff standing; the scope of Defendants' statutory parole authority; whether CAM's reopening—including the Enhancements—is final agency action; the relevance of Plaintiffs' reliance interests; and whether

injunctive relief is appropriate. *See* Mot. to Intervene 15, ECF 19. Proposed 2023 Intervenors' defenses also arise out of the same facts as the main action: the Biden Administration's reopening of the CAM Program.

Last, Proposed 2023 Intervenors are individual parents who bring an important firsthand perspective to developing the underlying factual issues of CAM's reopening. Their direct experience applying to reunite with their children under the CAM Enhancements will aid the Court in its assessment of the underlying issues related to this phase of CAM's reopening. *See* Order 3, ECF 41 (finding Defendant-Intervenors brought "a perspective that will contribute to full development of the underlying factual issues"); *Texas II*, 2023 WL 3025080 at *4 (permitting individual parole applicants to intervene in a challenge to another parole program because they bring "important perspectives, substantial expertise, and experience that will aid the Court in its consideration of the issues").

Proposed 2023 Intervenors' perspective as newly eligible CAM parents is distinct from that of the current Defendant-Intervenors. While both share an interest in the continued availability of the CAM Program, Defendant-Intervenors' interests are, or will soon become, more limited. Now that Defendant-Intervenor Timoteo's daughter has traveled to the United States, his interest is in the remaining availability of CAM re-parole for individuals already in the United States, and Defendant-Intervenor Uzias' interest may soon be similarly limited. Proposed 2023 Intervenors bring an important perspective given that they have just learned of their eligibility for CAM, they have not been able to begin processing yet, and they will have an interest in the continuing availability of CAM for children in danger in Central America for the foreseeable future.

As is well documented, CAM processing can be a years-long process. *See* Meyer Decl., Ex. A, App'x at 85; *Id.*, Ex. AA, App'x at 495. Newly eligible CAM applicants, such as Proposed 2023 Intervenors, who have not yet been able to file CAM cases or whose cases remain in early stages of in-country processing, can expect to wait many months, if not years, before receiving even an initial decision on their cases. *Id.* And if they are conditionally approved for parole then they will then be subject to even more time-intensive processing steps, such as medical exams and security checks. Meyer Decl., Ex. A, App'x at 106-07; *Id.*, App'x at 496. In 18 months, a new Administration may well opt to terminate the CAM Program yet again, including for pending cases, just as the Trump Administration did. While the current Defendant-Intervenors already have or are likely to have the in-country processing of their cases completed by then, cases reopened under later stages such as the CAM Enhancements almost certainly will not. Proposed 2023 Intervenors are among those that will have a strong incentive to defend the continued operation of CAM processing in Central America, while the CAM families who have already been reunited in the United States will no longer have that same interest.

Nor are the interests of the newly eligible Proposed 2023 Intervenors adequately represented by Federal Defendants, who must balance their defense of CAM with institutional interests in broad interpretations of executive authority. *See Texas I*, 805 F.3d at 663 (recognizing differing interests of parent-beneficiaries and federal government in another immigration program context); *Texas II*, 2023 WL 3025080 at *4 (same in another parole context). Proposed 2023 Intervenors' sole focus, on the other hand, is on their ability to reunite with their families through the CAM program.

## CONCLUSION

In light of the foregoing, Proposed 2023 Intervenors respectfully request that the Court grant them intervention.

Dated:   August 31, 2023                               Respectfully submitted,

/s/ Debra J. McComas                                   /s/ Kathryn C. Meyer
Debra J. McComas                                       Kathryn C. Meyer
                                                       NYS Bar #5504485 (*pro hac vice*)
HAYNES & BOONE LLP                                     Linda B. Evarts
                                                       NYS Bar #5236948 (*pro hac vice*)
State Bar No. 00794261                                 Mariko Hirose
                                                       NYS Bar #4802674 (*pro hac vice*)
2323 Victory Ave., Suite 700                           INTERNATIONAL REFUGEE
Dallas, Texas 75219                                    ASSISTANCE PROJECT
Tel. (214) 651-5000                                    One Battery Park Plaza, 4th Floor
Fax (214) 651-5940                                     New York, NY 10004
*debbie.mccomas@haynesboone.com*                       Tel. (516) 838-1655
                                                       Fax: (929) 999-8115
                                                       *kmeyer@refugeerights.org*
                                                       *levarts@refugeerights.org*
                                                       *mhirose@refugeerights.org*


*Counsel for Proposed Defendant-Intervenors*

## CERTIFICATE OF CONFERENCE

On August 29, 2023, counsel for Proposed 2023 Intervenors and Defendant-Intervenors conferred with counsel for Plaintiffs and Defendants concerning this motion. The identities of the attorneys conferring were as follows: Ryan Walters for the Plaintiffs, Joseph Darrow for the Defendants, and Kathryn C. Meyer, for the Proposed 2023 Intervenors and Defendant-Intervenors. Plaintiffs, Defendants, and Defendant-Intervenors do not object to Proposed 2023 Intervenors' permissive intervention motion.

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 31, 2023, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the CM/ECF system. I hereby certify that I have served the documentation on all counsel by a manner authorized by Federal Rule of Civil Procedure 5(b)(2) via the Court's CM/ECF filing system.

/s/ *Kathryn C. Meyer*
Kathryn C. Meyer